## W. C. THOMPSON v. C. G. CHRISTIE ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF BUTLER COUNTY.

Argued October 21, 1890—Decided November 10, 1890.
[To be reported.]

(a) In ejectment by the lessee in an oil-lease, the defendants claimed title, under a like lease prior in date to that of the plaintiff, but recorded after it; and, to show their own title, offered to prove that the former owners of their lease made the contract to sell it to them, received part of the purchase money, and put them in possession before the suit was brought.

(b) They offered to show, further, that, before the suit was brought, they expended thousands of dollars in developing the property, and that their contract for the purchase was put in writing and signed by all the assignors but one, who assented to its terms and received his share of the money paid before, but signed the contract one day after the writ issued:

1. The offer was admissible in support of the title set up by the defendants; and, upon the facts stated in it, they could successfully defend

Syllabus.

their possession, if their lease was a valid and subsisting one, unless the plaintiff, in taking the subsequent lease, acquired his title in good faith and without notice of the defendants' rights.

2. To show that the plaintiff had not so acquired title, it was competent for the defendants to prove that the plaintiff's law-partner, being applied to for advice how to terminate the lease held by defendants, suggested the making of the second one to the plaintiff and putting it on record, to secure priority over the defendants' unrecorded lease.

3. Although the plaintiff, when he took his lease, was ignorant of the existence of the prior one, he could not profit by the lease thus obtained for him, without being affected with notice of the facts brought to the attention of his partner during the negotiations and forming the inducement to the lease.

4. Upon a covenant in an oil-lease, that the lessee shall drill a well within a specified time, and on failure so to do shall pay the lessor $40 per annum until such well is commenced, the lessor cannot recover in ejectment for failure to drill the well, the lease containing no clause providing for a forfeiture of the lessee's rights upon such failure.

5. The rule prevailing in equity is that, to enable a lessor to declare and enforce a forfeiture, the right so to do must be distinctly reserved; the proof of the happening of the event upon which it is to be exercised must be clear; such right must be exercised promptly, and the result of enforcing the forfeiture must not be unconscionable.

(c) The plaintiff submitted evidence of a parol agreement, contemporaneous with the defendants' lease and on the faith of which it was signed, that the annual payments should commence one year earlier than stipulated for, and that upon failure to make the first of such payments the lease should be forfeited; but this was denied by the lessee who obtained the lease.

(d) For several months before the suit was brought, the defendants had been in actual possession engaged in drilling a well, and there had been no attempt to exercise a right of forfeiture except by the device of executing the new lease to the plaintiff, and the defendants proposed to show offers of payment refused by the lessor:

6. Upon the facts of the case as they were shown, and as the defendants offered to show them, the plaintiff would not be entitled to have the lease under which the defendants held reformed, to enable him to assert a forfeiture in this action, as in equity the conscience of a chancellor would not be moved to aid him therein.

7. Though a parol agreement for a forfeiture of the prior lease, for failure to commence the well or pay the rental, was entered into, yet an assignee of the lease for a valuable consideration and without notice of the agreement, would obtain and could convey a good title even to a vendee who had actual notice.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Statement of Facts.

No. 142 October Term 1890, Sup. Ct.; court below, No. 11 March Term 1890, C. P.

On December 4, 1889, W. C. Thompson brought ejectment against C. G. Christie, H. W. Christie and T. G. Christie, for forty acres of land in Connoquenessing township.

Under a Rule of Court providing for the filing of an abstract of title by the plaintiff in ejectment, a like abstract by the defendant, a replication by the plaintiff denying or admitting the latter, and issue under the plea of not guilty, to be entered by the prothonotary, the plaintiff filed an abstract exhibiting title in Hugh McClelland to the land in question, under a deed dated March 27, 1867, and an oil-lease thereof, for the term of fifteen years, from Hugh McClelland to the plaintiff, dated May 16, 1889, recorded May 21, 1889.

The defendants' abstract, filed January 6, 1890, admitted the title of Hugh McClelland, but called for proof of the lease to the plaintiff and denied that he acquired any title thereby; and, as afterwards amended, it set up the following chain of title in the defendants: Oil- and gas-lease, for the term of fifteen years, from Hugh McClelland to C. L. Jones and others, dated March 6, 1888, recorded May 23, 1889; assignments vesting the ownership of said lease in A. Griesbach, O. W. Shoup, Philip Shoup, J. P. Ripper and L. Ripper; agreement between said owners and H. W. Christie, dated September 24, 1889, for the assignment of said lease to said Christie; and an assignment from said owner to H. W. Christie dated December 5, 1889, recorded January 6, 1890. The abstract also averred that the plaintiff was not a bona fide purchaser for value of the lease set up by him, but took the same with notice, through his partner and agent, of the prior lease under which the defendants claimed; that he paid nothing for his lease, never took possession and never expended any money in developing on the faith of it; that the lessees in the Jones lease, or those claiming under them, took possession in October or November, 1889, commenced drilling a well about November 6, 1889, and finished it about December 25, 1889, at an expense of over $3,000. Along with their abstract, the defendants filed a plea of not guilty.

On January 18, 1890, the plaintiff filed a counter specifica-

tion, denying all the matters set up in the defendants' abstract, and averring that the Jones lease was obtained from McClelland by means of fraud and misrepresentation, was executed by the lessor on the faith of a contemporaneous parol agreement, and that it was null and void long before the defendants obtained any title thereto; that the defendants did not purchase the same in good faith, but took it with full knowledge of all the facts, and were notified of the plaintiff's lease before they took possession or invested a dollar in the property.

At the trial on April 12, 1890, the plaintiff, in his case in chief, put in evidence the lease from McClelland to himself, and the sheriff's return showing service of the writ of ejectment upon the defendants, and then rested.

The defendants, in their case in chief, first put in evidence the lease from McClelland to Jones and others of March 6, 1888, and the assignments thereof vesting title in Griesbach and others. Said lease was for the term of fifteen years, and so long thereafter as oil or gas could be produced in paying quantities, and contained the following stipulations:

"The party of the second part agrees to drill a test-well in the township of Connoquenessing, or within two miles of the above described premises, within one year from the date hereof; and if oil or gas is found in paying quantities in said test-well, the party of the second part agrees to complete one well on the above described premises within one year from the completion of said test-well, or, in lieu thereof, thereafter to pay to the said party of the first part forty dollars per annum until work is commenced.

"And it is further agreed, that the second party, his heirs or assigns, shall have the right at any time to surrender up this lease, and be released from all moneys due and conditions unfulfilled; then and from that time this lease shall be null and void and no longer binding on either party, and the payments which shall have been made shall be held by the party of the first part as the full stipulated damages for the nonfulfilment of the foregoing contract."

The defendants then offered an article of agreement, dated September 24, 1889, between Griesbach and others, of the one part, and H. W. Christie of the other part, for the sale of said lease to Christie, in consideration of $200 in hand paid, and a

further consideration, contingent upon the result of a well upon the property of one Shannon, viz., $300 if said well should produce ten barrels per day, or $600 if it should produce twenty-five barrels per day. The agreement further provided that Christie should take the lease "subject to a lawsuit now pending," and "subject to all claim that any one may have against the said lease." A certificate of an acknowledgment by all the parties before J. A. Ripper, justice of the peace, bearing date September 24, 1889, was appended to the agreement. The date of the acknowledgment appeared to have been written over erasures. The offer being objected to until the erasures appearing upon the paper were explained, the defendants called J. A. Ripper, who testified in substance that the agreement was signed and acknowledged before the witness by all of the parties to it, except Griesbach, on September 24, 1889, but the witness did not at that time fill up the certificate of acknowledgment; that Griesbach refused to sign it until he received all the money coming to him under it, but that he did sign and acknowledge it on December 5, 1889, when the witness filled up and signed the certificate of acknowledgment, dating it on that day, but after so doing the witness erased that date and substituted September 24th, entirely of his own motion, in view of the fact that all the parties except one had signed and acknowledged the paper on the day of its date; and that from September 24th to December 5th the paper remained in the possession of either the witness or one of the assignors. The defendants then renewed the offer of the agreement.

The offer was objected to for the reason, in substance, that the agreement was not executed and delivered and did not go into effect until December 5, 1889, after the bringing of this suit, and that, as appeared in the body of the instrument, Christie had notice of the plaintiff's claim.

By the court: Objection sustained.

The defendants then offered the same paper as an agreement between the vendors therein named, other than Griesbach, of the one part, and Christie of the other part; to be followed by proof of payment of the consideration; possession of the property taken in pursuance thereof and valuable developments and improvements thereunder by the defendants; to be followed with the further proof that the remaining party named

Statement of Facts.

therein agreed to the terms of sale, accepted his portion of the purchase money, and possession of his interest taken by defendants thereunder, all prior to the time suit was brought, and his subsequent approval of the agreement by adding his name thereto. This for the purpose of showing title in the defendants.

Objected to.

By the court: Objection sustained; exception.[1]

The defendants then offered in evidence a formal assignment of the Jones lease from Griesbach and others to H. W. Christie, dated and acknowledged December 5, 1889, and recorded January 6, 1890; to be followed by proof of possession of the property by the defendants several months prior to the date of the assignment, and the expenditure by them of large sums of money, to wit, about $3,000, in developing and improving the property, and payment of the consideration of said assignment, or a portion thereof, prior to suit brought.

Objected to, in substance, because the assignment was dated after suit brought; that no expenditure or development, prior to its date, could have been under or in pursuance of it, and that the defendants' brief of title did not allege any parol agreement.

By the court: Objection sustained; exception.[2]

The defendants showed, further, that the plaintiff paid nothing for the lease made to him by McClelland, and that said lease was procured and written by the plaintiff's father, John M. Thompson, who had notice of the Jones lease at the time.

The defendants having closed their case in chief, the plaintiff, in rebuttal, called Hugh McClelland, the lessor, who testified to a conversation between himself and C. L. Jones at the time when the lease to Jones was signed, as follows:

"When he presented the lease to me, I says, 'I want it distinctly understood, I don't claim to understand all the hooks and turns of the law, but for one year I will sign it.' He says, 'Most assuredly it is only for one year; I don't ask you for any more.' Then there was to be a test-well inside of that year from the 6th of March, or he would pay $40 or deliver up the lease. . . . ."

Cross-examined: "Q. You knew you were signing a lease that made a lease for fifteen years, didn't you? A. Yes sir;

Statement of Facts.

providing—Q. And you say that he told you before you signed that lease that he would drill a well within a year or pay you $40? A. Yes, sir. Q. A dollar an acre for not drilling? A. Yes, sir. Q. At the end of the year? A. Yes, sir. Q. That was the extent of his promise, and induced you to make the lease? A. Yes, sir. Q. You knew you were signing a lease for fifteen years, but he told you he would operate within a year; if not, he would pay you $40 for neglecting so to do, for refusing so to do? A. Yes, sir. Q. That is the extent of his representations? A. Yes, sir. . . . . Q. Then, as I under- stand, the reason you signed this lease was that he said before you signed it that he would put down a well in Connoqueness- ing township within a year, and if not he would pay you $40? A. Yes, sir. Q. And because that well was not put down in Connoquenessing township, and because that $40 was not paid at the end of the year, you contend that he only had the lease for one year and he had no right to assign to Christie? A. Yes, sir. Q. Now that is your whole contract, is it? A. Yes, sir."

Re-direct: "Q. You said to Mr. Marshall, as I understood you, that he said he would drill a well within a year or pay your money within a year, and then Mr. Marshall asked you if that was all he said; what, if anything, did he say and did you say that he said? A. He said he would deliver up the lease. Q. If he didn't do either? A. Yes. He further said that that lease would never go out of his hands. If that well wasn't drilled, or that money wasn't paid, he wasn't going to give that lease out of his hands. Q. But would hand it back to you? A. Yes, sir."

The witness testified, further, that the test-well referred to in the agreement with Jones was not drilled within the year, and the $40 for delay was not paid to the witness, nor was it ever offered to him by any one, until August, 1889, when Mr. Christie was notified by the witness that the lease was for- feited by the non-payment of the money, whereupon Christie offered to pay it but the witness refused to accept the offer. The defendants' counsel proposed to cross-examine the witness as to whether he did not go to John M. Thompson's office on the day when the lease to the plaintiff was made, not for the purpose of making a lease, but to obtain advice as to how he could avoid the prior lease made to Jones and others.

Objected to, as not cross-examinatino.

By the court: Objection sustained; exception.[4]

The wife, two daughters and a son of Hugh McClelland, being called by the plaintiff, all testified, in substance, that at the time the Jones lease was signed Jones agreed either to drill a well in the township or to pay $40 within a year, and, if he failed to do either, to give up the lease; and that the witnesses were consulted by Hugh McClelland, in Jones's presence, as to whether he should accept those terms, before signing the lease; also that Jones agreed to hold the lease himself and not to transfer it to any one else during the year.

The plaintiff testified that he had no knowledge of the existence of the Jones lease at the time he signed the lease from McClelland to himself; that the witness was not present when the latter lease was written, never negotiated with McClelland about it and had no knowledge of it, until informed by his father, and partner, John M. Thompson, that McClelland had made such a lease and had left it in the hands of the notary public who had taken his acknowledgment; and the witness, after looking at it in the office of the notary, accepted and signed the lease.

The defendants, in sur-rebuttal, made the following offer:

Defendants' counsel now propose to prove by Hugh McClelland and others, that on May 16, 1889, he visited the office of Thompson & Son, John M. Thompson and William C. Thompson, father and son being partners in business, for the purpose of consulting them as to how he could avoid and annul a lease made to C. L. Jones and others of the date of March 6, 1888, for the land now in controversy, and, after consulting with Mr. John M. Thompson, the father of William C. Thompson, the son William C. Thompson not being present, Mr. Thompson told Mr. McClelland he could either file a bill to cancel the lease or else lease to some person without knowledge of the old lease and thereby avoid the lease in law; that, in pursuance of this advice or suggestion of John M. Thompson, the lease to William C. Thompson was executed and left with John M. Thompson; that no consideration was paid for the lease; that the lessor, Hugh McClelland, and the nominal lessee, William C. Thompson, had no conversation in regard to the lease or its terms. Further, that Hugh Mc-

Charge of Court below.

Clelland, the lessor to Wm. C. Thompson, brought his action of ejectment at No. 10 March term 1890, this action being No. 11 March term 1890, against the same defendants as in this action for the same land. This being offered, in connection with the evidence already given to the court and jury, to show that the lease of May 16, 1889, of Hugh McClelland to Wm. C. Thompson was merely a device to avoid or defeat the lease of said Hugh McClelland to Jones and others of March 6, 1888; that the use of the name of William C. Thompson was only a contrivance to obtain the name of a party plaintiff who had no personal knowledge of the lease of March 6, 1888, and it was not a lease in good faith to convey a title in the way of general business.

Objected to by plaintiff's counsel.

By the court: It would seem to me that under the rules this offer, if it is covered by your abstract, would have very considerable force, but it would be getting outside of the pleadings to admit it; the objection is therefore sustained; exception.[10]

The defendants made another offer, substantially to the same effect as the offer made in their case in chief,[3] which upon objection was overruled; exception.[9] They also offered to show by Griesbach that, while he was interested in the Jones lease, and within a year after its date, he offered to pay McClelland $40 as rental, not on the basis of his being entitled to receive it, but in view of the fact that some of his neighbors had been receiving rentals.

Objected to.

By the court: In your offer do you use the words, offered the money, as a legal tender.

Mr. Brandon: Not as a legal tender, but as an offer to pay.

By the court: The objection is sustained; exception.[8]

The defendants put in evidence the deposition of C. L. Jones who testified that there was no agreement between him and McClelland, in reference to the lease between them, that the witness remembered, except what was embodied in the written lease, and that the witness did not agree to pay rental within one year.

At the close of the testimony the court, HAZEN, P. J., charged the jury in part as follows:

Charge of Court below.

The defendants, though they may fail in their own paper title, may defend the action by showing an outstanding title in others; and, having, in this case, failed to connect their ownership by paper title, they were remanded to the point, given them under the law, to defend by showing good title outstanding in another person or persons, and this is the title set up and under which they defend.

It brings the matter then to this question : The plaintiff, after having introduced his paper title, the præcipe and writ and acceptance, the admission of the parties that there was good title in Hugh McClelland, rested. After hearing defendants as to their title, he sets up this defence in rebuttal, which it was claimed and not disputed was in their abstract and gave them the right to offer the proof, that at the time the lease of March 6, 1888, was executed, it was at the dwelling of Hugh McClelland; that, at the execution of this lease, C. L. Jones, who was acting for himself and the others named in the lease as grantees, McClelland, and the members of McClelland's family, there was a parol agreement, additional to what was expressed in writing in the lease, covering that which probably ought to have been embraced in the lease in writing, to the effect that a well was to be put down within one year within a given territory named, or the payment of money named, or the surrender of the lease. If this be true, it must be established to the satisfaction of the jury that they may find the fact, by clear and indubitable proof, and the burden of that is thrown upon the plaintiff. He must establish this fact in the way provided by the law, and by such clear and indubitable proof, as stated, that the jury will be able to say that that was a part of the agreement at that time and without which the signature of McClelland would not have been appended to the agreement. If this fact be so clearly established that you may determine from the proofs that such was the case, and without this agreement in parol, at the time, McClelland would not have executed that lease, then that becomes a part of this lease; and having so found that fact, then we think, gentlemen, you have reached the main point in the controversy now before you.

If you find that to be a part of the contract, at the time it was made on March 6, 1888, then we are of opinion that the defendants have not set up a good title outstanding in another

Charge of Court below.

person, much less good title in themselves. Having found or reached that conclusion, your duty then would be brief, and consist only in returning a verdict for the plaintiff for the land described in the writ with six cents damages. On the other hand, if you reach the conclusion that this parol part of the agreement, claimed to have been made at the time and upon the strength and credit of which the signature of Hugh McClelland was obtained and he executed that paper of March 6, 1888, that that was not a part of the agreement, but that the paper as it is in writing shows the whole agreement then made, then we think your duty is equally short, and would consist only in returning a verdict in favor of defendants. After hearing this case, gentlemen, this is the conclusion which we hold in regard to the main question before you, and it turns upon that point and upon that solely.

Defendants' counsel have asked the court to instruct you upon certain points submitted:

1. The plaintiff in this case, W. C. Thompson, is not a holder of the lease upon which he brings suit, for value, without notice of the prior lease to Jones and others, and his record gives him no priority over the Jones lease.

Answer: This is refused.[11]

2. The presumption is that when McClelland made the lease to Jones and others the whole contract of the parties was reduced to writing and put in the lease. The burden is upon plaintiff to convince the jury that any part of it was omitted, and that McClelland would not have signed it if it had not been for the parol promise. The evidence to show this must be clear, direct, convincing and indubitable.

Answer: We will divide this second point into two parts, and what we have just read we will call the first part; what follows, the

2d part: The court must be convinced that the witnesses who testify to the parol contract or promise are worthy of belief; that they distinctly remember the facts and truly state them. The evidence in this case is not clear, direct, convincing and indubitable, and the court, sitting in the case as chancellor, should so instruct the jury and direct a verdict for defendants.

Answer: The first part of this point is affirmed; the latter part is refused. As a whole, the point is refused.[12]

Charge of Court below.

3. The evidence upon the part of plaintiff, if it shows any promise upon the part of Jones not incorporated in his lease, shows only a promise to pay a rental of forty dollars per year, in one year after the execution of the lease, instead of two years as written therein, or in default of said payment that Jones would surrender the lease. This clause of surrender was not a forfeiture which can only be taken advantage of by the lessor, but was a privilege of the lessee to avoid the payment of rentals; and if the lessee did not avail himself of that privilege, an action would lie against him, but no forfeiture would accrue. The agreement to pay rentals cannot be enforced in an action of ejectment and the verdict must be for defendants.

Answer: This is refused.[13]

4. The evidence introduced by the plaintiff in this case to reform, or cancel, or annul the Jones lease, is in the nature of an application to the court sitting as a court of equity to reform, cancel, or annul the Jones lease, by introducing into it by parol a clause of forfeiture, and then to immediately enforce that forfeiture for the non-payment of a small sum of money. The application is governed by equitable principles. Courts of equity do not enforce forfeitures in general, and especially for non-payment of money; and in this case the forfeiture is not demanded by any equity. The verdict then must be for defendants, and McClelland be remitted to his action at law to recover the rental.

Answer: As a whole this is refused.[14]

5. The reformation of a contract in writing relating to real estate by parol testimony, is permitted only to prevent a fraud. The evidence shows that McCelland has made a lease to Thompson, since the Jones lease, upon terms less favorable to him than the Jones lease, and he will not be benefited by changing the terms of his lease. He has therefore no equities to enforce. And the evidence also shows that possession of the lease was never given to Thompson and that he never paid value for it, and he will therefore lose nothing if the paper is not reformed. This suit is brought by Thompson who has acquired no independent rights. Nothing was transferred to him but the mere right to attack the Jones lease for fraud, and

Arguments.

that right was.not assignable in equity. The verdict in this case, Thompson alone being plaintiff, must be for defendants.

Answer: This is refused.[15]

6. If the jury believe that Jones obtained his lease by fraud, or that he made a parol promise upon the strength of which the lease to him was executed, but also find that any interests were afterwards sold to others for a valuable consideration paid without notice of the fraud or parol agreement, to the extent of those interests the verdict must be for defendants.

Answer: This is refused.[16]

7. Under all the facts in this case, the verdict must be for defendants.

Answer: This is refused.[17]

—The jury returned a verdict for the plaintiff for the land described in the writ, with six cents damages. Judgment having been entered, the defendants took this appeal, assigning for error:

1–4. The refusal of the defendants' offers.[1 to 4]

8–10. The refusal of the defendants' offers.[8 to 10]

11–17. The answers to defendants' points.[11 to 17]

*Mr. Thomas M. Marshall* and *Mr. W. D. Brandon* (with them *Mr. T. C. Campbell*), for the appellants:

1. The contract dated September 24, 1889, was admissible, at least so far as the parties who signed it prior to the commencement of the suit were concerned. Formal delivery of it was unnecessary. Execution and acknowledgment by the vendors, and possession and improvement by the vendee, fully take the place of delivery. But if formal delivery was essential, the paper should have been admitted and the question of delivery left to the jury: Galbraith v. Zimmerman, 100 Pa. 374. A defendant in ejectment may defeat the action by showing a title in himself at the time of trial: Galbraith v. Elder, 8 W. 101. And even a plaintiff's title acquired after suit brought is admissible, when the conveyance of the legal title to him was made merely to complete an equitable title acquired before suit, accompanied by possession and improvements: Rockland Coal Co. v. McCalmont, 72 Pa. 221. But all these questions did not concern the plaintiff. He cannot object to the proof of a parol title to the Jones lease, under

Arguments.

which the defendants were in possession and made improvements: Christy v. Brien, 14 Pa. 248; Rockland Coal Co. v. McCalmont, 72 Pa. 221; Moody v. Fulmer, 3 Gr. 17. His objections to our offers were collateral to any questions involved in the case. The similar offer to show title, possession, improvements and expenditure of money, when made in rebuttal in answer to the equities set up by the plaintiff against the Jones lease, should have been received, as it was not shown that the defendants had notice of the facts upon which the attempt to reform that lease was based.

2. The question whether the plaintiff's lease, as the one first recorded, had priority, was the sole question at the close of the defendants' case in chief. In the plaintiff's rebutting case, he opened up a new attack upon the defendants by calling McClelland and others to show a parol agreement upon the faith of which the Jones lease was signed, and the breach of that agreement. Our offers to show, on the cross-examination of McClelland, and afterwards in sur-rebuttal, that the lease to the plaintiff was made for the purpose of preventing the holders of the Jones lease from defending against the charge of fraud, should have been received. Such a purpose was dishonest. The proof of it by cross-examination was admissible, because it bore upon the trustworthiness of McClelland's testimony: Fulton v. Bank, 92 Pa. 112; Curry v. Curry, 114 Pa. 367. But it was admissible for another purpose. The plaintiff's attempt to reform the lease was an appeal to the equity powers of the court: Nicolls v. McDonald, 101 Pa. 514; Rowand v. Finney, 96 Pa. 192; and a chancellor will not grant relief when the plaintiff's hands are not clean: Reno v. Moss, 120 Pa. 49; Gill v. Henry, 95 Pa. 388; Kunkle's App., 107 Pa. 368; Delp's App., 109 Pa. 277; Stafford v. Wheeler, 93 Pa. 462: Lynch's App., 97 Pa. 349; Scranton Electric Co.'s App., 122 Pa. 154; Weaver v. Craighead, 104 Pa. 288. As the proof of such dishonest purpose was in rebuttal of new matter, first alleged in the plaintiff's counter abstract, and first shown upon the trial, in his rebutting case, it was unnecessary, under the Rule of the Court below, to give notice of it in our abstract.

3. It is objected that McClelland's motive could not affect the plaintiff unless he had notice of it. We say that he had

Arguments.

notice. The lease to him was written by his father and law partner, who advised the making of it for the purpose referred to, giving that advice as a member of the law firm. Under the circumstances of the case, the plaintiff could not take the benefit of the lease without being visited with notice of all that his partner knew: Wade on Notice, § 691. But it is immaterial whether he had knowledge of the fraudulent purpose in making the lease or not. He paid nothing for it, expended nothing on the faith of it, and stands in no better position than his lessor: Beck v. Uhrich, 13 Pa. 636; Union Canal Co. v. Young, 1 Wh. 410; Griffiths v. Sears, 112 Pa. 523; Forest Oil Co.'s App., 118 Pa. 138. The fraud which is alleged by McClelland as the ground for admitting evidence of a parol promise, made at the execution of the Jones lease, is not in the lease itself, but in the breach of the contemporaneous promise: Lippincott v. Whitman, 83 Pa. 244. If, then, an offer to perform it within the stipulated time be shown, there is no ground for the reformation, and it is inequitable to enforce a forfeiture: Westmoreland N. Gas Co. v. DeWitt, 130 Pa. 235. The court refused to permit us to show that Griesbach offered to pay the lessor rental, because we did not propose to show a legal tender. This was extending the effect of a legal tender, so as to make the want of it a ground for permitting McClelland to refuse to receive the rental to be paid under the parol promise, and then to forfeit the lease because it was not paid.

4. The appeal for reformation and forfeiture being to the court sitting in equity, the duties of the judge were those of a chancellor and the verdict was merely advisory. Whether there was sufficient satisfactory evidence to justify a decree, was a preliminary question for the court. We contend that the evidence here was not of such a character as to justify the change of a written instrument for the conveyance of land. It was essential for the plaintiff to show that McClelland signed the lease on the faith of a parol promise of forfeiture. The testimony of the understanding of others cannot help the matter, if McClelland himself did not understand that a forfeiture was to follow a breach of the parol agreement, for it was not upon the faith of what they understood that he signed the paper. Comparing his testimony upon cross-examination with his testimony in chief, it is not clear that he understood the

Arguments.

lease was to be returned if rental was not paid. But a parol agreement to return a lease is not a cause of forfeiture which can be enforced in this action. The agreement to return was a privilege the lessee had, to dissolve the relation of landlord and tenant. And an agreement to pay rental unless the lease is surrendered, cannot be forced by ejectment: Krebs v. Stroub, 116 Pa. 405.

5. Admitting, however, that the parol promise contains a clause of forfeiture and has been made out clearly, a court of equity will not reform the lease, and in the same breath and in the same proceeding forfeit it in favor of a volunteer, simply because a small sum of money, offered to McClelland by Christie before the bringing of the suit, was not paid before March 6, 1889. Courts of equity never lend their assistance in the enforcement of a forfeiture, but leave the party to his legal remedies: Oil Creek R. Co. v. Railroad Co., 57 Pa. 72. Forfeitures, if no longer odious, are at least not favored, especially when founded on mere delay in the payment of money: Westmoreland N. Gas Co. v. DeWitt, 130 Pa. 235. In any event, McClelland has no equity to reform the lease, for any recovery by him would be in the interest of the plaintiff; and the plaintiff has no equity, because he never had possession of the land, paid nothing for his lease and can lose nothing if he is defeated in this action. The lease made to him by McClelland was in effect merely an assignment of the right to attack the Jones lease for fraud, in a court of equity, so as to have it reformed and forfeited. This mere right is not assignable: 2 Story Eq. J., § 1040 *h.* and note 5; note to Marshall v. Means, 12 Ga. 61 (56 Am. Dec. 444).

*Mr. John M. Thompson* (with him *Mr. Charles McCandless, Mr. L. McQuistion, Mr. S. F. Bowser, Mr. John M. Greer* and *Mr. W. A. Forquer*), for the appellee :

1. The papers and testimony, offered to show title in the defendants, were properly rejected. If the plaintiff's lease was not good, he could not recover, no matter whether the defendants had or had not title. If the Jones lease had ended by its own conditions, the testimony could not help the defendants nor hurt the plaintiff. The expenditures by the defendants, which it was proposed to show, were admittedly all made after

Arguments.

notice that the lease was in dispute. McClelland's motive in making the lease to the plaintiff, whether to avoid the former lease without the cost of a suit, or to secure the development of his farm, or both, were matters in which the defendants had no interest, and by which the plaintiff's title could not be affected. Griesbach's willingness to pay rental was immaterial. It might be evidence that the lessees knew they were bound to pay within the year or forfeit the lease. Its rejection did the defendants no harm.

2. The real inquiry in the case was one for the jury, viz.: What were the terms and conditions of the Jones lease? It was a matter of indifference what title Christie had to it, if it was ended by forfeiture. That the agreement for its forfeiture was made, and that the lease was signed on the faith of it, has been established by the testimony of five witnesses, practically uncontradicted, and by the verdict of the jury. Under well-settled principles, that agreement became a part of the lease, with the same force and effect as though written therein, and failure to perform the conditions specified avoided the lease. A clause of forfeiture is necessary for the landowner's protection in such contracts. In such cases, forfeitures are not odious, but will be encouraged and enforced: Brown v. Vandergrift, 80 Pa. 142; Christie's App., 85 Pa. 463; Stoughton's App., 88 Pa. 198; Wills v. Gas Co., 130 Pa. 222; McKnight v. Kreutz, 51 Pa. 237; Kreutz v. McKnight, 53 Pa. 319; Spencer v. Darlington, 74 Pa. 294; Becker v. Werner, 98 Pa. 555; Paschall v. Passmore, 15 Pa. 303; Newman v. Rutter, 8 W. 54; Wilson v. Guthrie, 2 Gr. 111; Napier v. Darlington, 70 Pa. 64; Kerr v. Day, 14 Pa. 112; Columbia Coal Co. v. Miller, 78 Pa. 246.

3. The continued possession of McClelland, after the breach of the conditions of the lease, was equivalent to a re-entry for condition broken. His making another lease to the plaintiff, which was put on record, and his notice to the defendants that the first lease was dead, were an unequivocal declaration of a forfeiture. The forfeiture therefore took effect: Hamilton v. Elliott, 5 S. & R. 385; Clark v. Trindle, 52 Pa. 495; Wills v. Gas Co., 130 Pa. 222; McKissick v. Pickle, 16 Pa. 149; Kenrick v. Smick, 7 W. & S. 41; Davis v. Moss, 38 Pa. 346; Sheaffer v. Sheaffer, 37 Pa. 525. The parol evidence offered to show

Opinion of the Court.

the agreement for a forfeiture was admissible for that purpose: Greenawalt v. Kohne, 85 Pa. 375; Christ v. Diffenbach, 1 S. & R. 464; Miller v. Henderson, 10 S. & R. 290; Lingenfelter v. Ritchey, 58 Pa. 488; Bown v. Morange, 108 Pa. 75; Wolfe v. Arrott, 109 Pa. 475; Chalfant v. Williams, 35 Pa. 215; Bank v. Fordyce, 9 Pa. 277; Thudium v. Yost, 20 W. N. 217; Cullmans v. Lindsay, 114 Pa. 167; Phillips v. Meily, 106 Pa. 536; Gump's App., 65 Pa. 478; Shughart v. Moore, 78 Pa. 469; Parke v. Chadwick, 8 W. & S. 98; Renshaw v. Gans, 7 Pa. 117; Hoopes v. Beale, 90 Pa. 83; Lyon v. Bank, 14 S. & R. 286.

OPINION, Mr. JUSTICE WILLIAMS:

The contest in this case is between the holders of an unrecorded oil lease in possession, and the holder of a subsequent lease taken and recorded before the defendants went into possession and began operations on the land. The land was owned by Hugh McClelland, who made a lease to Jones and others for oil purposes in 1888. By the terms of the lease, Jones and others were to drill one test-well within two miles of the land within one year. If oil was found in paying quantities in the test-well, they were " to complete one well on the above-described premises within one year after the completion of said test-well, or, in lieu thereof, pay to the party of the first part forty dollars per annum until work is commenced." There was no clause in the lease providing for re-entry or forfeiture. The title of the lessees, after passing through several intervening parties, lodged in the defendants, who went into possession in September, 1889, built a rig, and began to drill an oil-well.

The plaintiff claimed under a lease made and recorded in May, 1889. On the trial he gave his lease in evidence, showed the possession of the defendants, and rested.

Christie and others defended their possession under the first lease. To show their title they made an offer to prove that all the former owners of the Jones lease had agreed to assign it to them in September, 1889, had received part of the purchase money, and had put them into possession; that in pursuance of this bargain an assignment was drawn up, signed and acknowledged by all the grantors, except one, on the 24th day of September, 1889, and by him in December, on the day after the

Opinion of the Court.

issuing of the writ in this case; that the grantor who had not signed when the writ was issued had assented to the terms of the sale, and received his share of the money paid, before suit brought; and that the defendants after their entry had expended several thousands of dollars in preparing for and in drilling an oil-well on the land, before the writ in this case was issued. Upon these facts the defendants could successfully defend their possession, unless the plaintiff, who was a subsequent lessee, had acquired his title in good faith and without notice of their rights.

To show that this was not the case, they made a further offer to prove by McClelland, both upon his cross-examination and again when called by them, the circumstances under which he made the lease to the plaintiff. Their offer was to show that McClelland went to the law-office of J. M. Thompson and W. C. Thompson, who were law-partners, and father and son, for advice in regard to the best manner to proceed in order to terminate the lease to Jones and others; that J. M. Thompson advised, as the cheapest and most expeditious method, the making of a new lease, and putting it upon record so as to secure priority over the unrecorded lease to Jones; that he suggested his son and law-partner as the person to whom the new lease should be made; that the lease was accordingly drawn by him and executed by McClelland for the express purpose of being used to defeat the title of the holders of the Jones lease. These offers were competent, and the evidence should have been received. W. C. Thompson cannot profit by a lease obtained for him by his law-partner, without being affected by notice of the facts brought to the attention of his partner during the negotiation and which formed the inducement to the lease: Bracken v. Miller, 4 W. & S. 102. Having notice, he took subject to the title of the holders of the first lease, notwithstanding the fact that their lease was not recorded: Swank v. Phillips, 113 Pa. 482. He stood, therefore, in the shoes of his lessor, and could not recover unless McClelland could have done so if the action had been brought by him.

But there was no clause of forfeiture in the lease, and forty dollars per annum was fixed as the price of delay. McClelland could not have recovered in ejectment, therefore, because, by the terms of the lease, it was money, not the possession of the

tenants, which delay in completing the well entitled him to demand. Understanding exactly the position of the case, the plaintiff next attempted to reform the lease by adding a clause of forfeiture. He proved by McClelland and members of his family that he was induced to sign the lease by means of a contemporaneous verbal agreement that if the well was not drilled, as provided, within one year, and the forty dollars was not paid, the lease should be delivered up. This was denied by Jones, who negotiated for and wrote the first lease, and it was not consistent with the terms of that instrument. It is not easy to see how, upon this state of the evidence, a chancellor could pronounce the evidence of the alleged omitted clause to be " clear, convincing, and indubitable," as was done in answer to one of the plaintiff's points; but, as the learned judge had the witnesses before him, we will not undertake to say that his conclusion was wrong.

The defendant's fourth point drew attention to the position of the plaintiff, the kind of relief he was seeking, and the rules prevailing in courts of equity upon the subject of forfeitures. It was refused without any explanation of the subjects to which it referred. This was misleading. The rule undoubtedly is that the right to declare a forfeiture must be distinctly reserved; that the proof of the happening of the event on which the right is to be exercised must be clear; that the party entitled to do so must exercise his right promptly; and that the result of enforcing the forfeiture must not be unconscionable. In this case the existence of the right was denied. There had been no attempt to exercise it except by means of the device suggested by counsel of executing a new lease. The lessees were in actual possession, and for several months had been engaged in the work of drilling a well on the premises. It would hardly be contended that, if McClelland was in a court of equity with a bill to reform this lease for the purpose of enabling him to assert a forfeiture upon the facts of this case, as they were shown, and as the defendants offered to show them, the conscience of a chancellor would be moved to aid him by a decree.

The sixteenth assignment of error is also sustained. The court was asked to say to the jury if they found that a verbal agreement providing for a forfeiture of the lease was made by Jones as the plaintiff alleged, yet if they also found that in-

terests in the lease were afterwards sold for a valuable consideration, without notice of the verbal agreement so made, their verdict must be for the defendants to the extent of such interests. The court refused so to charge. It is well settled that a bona fide purchaser, without notice of a secret agreement or trust, takes the title discharged from such agreement or trust, and that he can convey a good title even though his vendee has had actual notice : Bond v. Stroup, 3 Binn. 66 ; Bracken v. Miller, 4 W. & S. 102 ; Meehan v. Williams, 48 Pa. 238. The plaintiff sought to avail himself of this rule, and claimed to be a lessee without notice, and in good faith, with a recorded title. The trouble was not with the rule he invoked, but with the facts embodied in the defendants' offers, which were calculated to fix him with notice. For the reasons given, this judgment cannot be sustained, and it is now

Reversed, and a venire facias de novo awarded.

