Opinion by
Morrison, 3.,
This is an action of ejectment brought to enforce the forfeiture of a certain written lease between J. A. Hornet and Grace Singer, one of the defendants, dated November 9, 1900. At the close of the plaintiff’s testimony, the court granted a compulsory nonsuit and subsequently refused to take it off. This gives rise to the first assignment of error.
The lease above referred to “ demised and let unto the said lessee, above named, the right and privilege to quarry stone in and upon the following described premises .... together with the necessary land for a dump pile, for the term of ten years from the date hereof.
*494 “The said lessee for herself agrees to quarry and remove from the quarry during the continuance of the lease an average of 40 carloads of salable stone per annum, said carloads not to exceed in weight the amount of 25 tons; and to pay to the said lessor, as a rent or royalty for the said quarry and privileges heretofore granted, the sum of five dollars per carload for each and every carload so quarried and sold. Said payment is to be made within thirty days after the stone are quarried, sold and delivered to the parties purchasing the same. It is further agreed and understood that should the said lessee fail or refuse to make the payments as aforesaid for the period of 30 days after the same become due and payable, or should she abandon said quarry for the space of 90 days in any working season for quarrying, or if she should let or sublet the whole or any part of the said quarry without the written consent of the lessor, or violate any of the agreements of this lease, then in either case said lessor may declare this lease null, and reenter and take possession of said quarry without any let or hindrance and without any process of law.”
We construe the agreement between the parties to be a lease and the relation of landlord and tenant is established thereby, and the sum of $5.00 per carload of stone quarried and sold is in the nature of rent: Watson v. O’Hern, 6 Watts, 362.
The learned counsel for the appellants states the grounds of forfeiture as follows: 1. A failure to take out the quantity of stone called for by the agreement. 2. A failure to pay for what were taken out. The action to enforce the forfeiture was begun early in the third year and therefore it is only important to consider the number of carloads of stone quarried and removed during the first year, which were seven, and during the second year, which were sixteen loads. The counsel contends that the lease required the lessee to quarry and remove, during the continuance of the lease, forty carloads of salable stone during each separate year. We do not think this is a correct construction of the covenant ón that subject. The language is: “The said lessee for herself agrees to quarry and remove from the quarry, during the continuance of the lease, *495 an average of 40 carloads of salable stone per annum, said carloads not to exceed in weight the amount of 25 tons.” The plaintiffs are contending for a forfeiture after the defendant has entered and expended considerable labor and money in opening the quarry, making roads and providing facilities for removing the stone. The plaintiff’s evidence shows that a large block of valuable stone had been uncovered and such preparations made that the quarrying and removing could have progressed rapidly during the third year. The evidence also shows that a large quantity of worthless stone and material had been removed before the good stone were reached. The plaintiffs must, in this action, be bound by a strict construction of the terms of the lease on the well-settled doctrine that forfeitures are odious and must be strictly construed: Wick v. Bredin, 189 Pa. 83. Forfeitures are to be construed strictly: Westmoreland, etc., Nat. Gas Co. v. De Witt, 130 Pa. 235.
In Thompson v. Christie, 138 Pa. 230, which was an action of ejectment, the Supreme Court held, as stated in the syllabus: “The rule prevailing in equity is that, to enable a lessor to declare and enforce a forfeiture, the right so to do must be distinctly reserved; the proof of the happening of the event upon which it is to be exercised must be clear; such right must be exercised promptly, and the result of enforcing the forfeiture must not be unconscionable.”
In the present case the lessor served his notice of forfeiture on January 29, 1903, nearly three months after the expiration of the second year of the term. During this time the lessee continued her quarrying operations and actually shipped three carloads of stone. But we construe the lease to only require the lessee to take out an average of forty carloads of stone per annum during the whole ten years term, provided she did not abandon the quarry for the space of ninety days and there is no pretense that there was any such abandonment. It is useless to argue that this construction deprives the lessor of his annual royalty or rental for forty carloads per year. The answer to such argument is that the lease does not require the quarrying and removing of forty carloads each *496 year. It provides in clear language that sufficient stone shall be quarried and removed to average forty carloads for each year of the ten-year term. Therefore it was impossible to declare and enforce the forfeiture early in the third year of the term, because there had not been forty carloads taken out during each of the first and second years. We think this principle is ruled in Phœnix Silk Mfg. Co. v. Reilly, 187 Pa. 526. We hold that the failure to remove forty carloads of stone for the first year and forty for the second year, furnishes no ground for forfeiture of the lease.
The next question is, did the nonpayment of rent work a forfeiture 'under the facts in this case? The lease made no provision as to where the rent should be paid; it does provide that if the lessee fail or refuse to make the payments for the period of thirty days after the same became due and payable, the lessor may declare the lease null and re-enter and take possession, etc. There is not a particle of evidence that the rent was ever demanded on the premises: “Where there is a condition of re-entry on nonpayment of rent, several things are required by the common law, to be previously done, to entitle the reversioner to re-enter. There must be a demand ■of the precise rent due, on the very day on which it becomes due, on the most notorious place on the land, although there should be no person on the land ready to pay it:” McCormick v. Connell, 6 S. & R. 151; Rea v. Eagle Transfer Co., 201 Pa. 273.
In addition to this the so-called forfeiture notice served January 29, 1903, upon the lessee, is not a valid notice of forfeiture. The lessor undertook to declare the lease null and void as to the rights of the lessee, but valid as to his remedies under it. The notice, in part, read: “I hereby notify you that I have declared said agreement and lease to be at an end find null and void so far as your rights are concerned, and you are hereby notified to quit the said quarry at once and not take therefrom any further stone whether quarried or not or remove any other property therefrom until you have paid the balance due under your said agreement and lease.”
Now turning to the lease, it gives the right under certain *497 conditions for the lessor to declare it null and void, and reenter, etc. This clearly means that the lease is at an end or null and void. The lease contains no clause reserving the right to recover accrued payments of rent after forfeiture. As this lease is drawn, a forfeiture !of it by the lessor, for conditions broken by the lessee,' ended the lease as to both parties. If, after the notice of forfeiture was given, the lessor had collected his rent, that ground of forfeiture would fall: Wheeling v. Phillips, 10 Pa. Superior Ct. 634, and cases there cited. In Chauvenet v. Person, 217 Pa. 464, cited by appellant, the “ lease specifically provides that at the option of the lessor it shall become void, excepting as to the liability of the lessee herein.”
We will not be understood as deciding that the plaintiffs cannot maintain an action for damages if the lessee fails to operate the stone quarry with reasonable diligence. But that question is not now raised: Watson v. O'Hern, 6 Watts, 362.
We have carefully examined the ■ authorities cited by the learned counsel for the appellant and have considered his earnest argument, but we are not satisfied that any of the grounds of forfeiture set up were sustained by the evidence. There is nothing in the assignments of error requiring further discussion.
The assignments of error are all dismissed and the judgment is affirmed.