## Snyder v. Manjon et al.

*Landlord and tenant—Lease—Warrant to enter judgment—Violation of covenants of lease—Opening judgment—Renewal—Notice—Termination.*

1. The provision in a lease that in default of notice given three months before the expiration of the term, on the part of the lessees, of their intention to vacate, and, on the part of the lessor, of her intention to require delivery of possession at the expiration of the term, the lease shall be considered as renewed for another five-year term, must be construed in connection with the words giving the privilege of renewal to the lessees.

2. So construed, the lessor could only terminate the lease by notice given three months before the expiration of the term, in the event that the lessees had failed to give notice three months before the expiration of their term of their intention to vacate the premises. On failure of both parties to give notice of their intention, the lease would renew itself by holding over, and the giving of notice by the lessees of their intention to hold over precluded the lessor from ending the term merely by notice.

3. A forfeiture clause in a lease is operative only at the option of the lessor, and the lease continues a valid obligation until the lessor declares it forfeited, and unless he acts promptly his right to do so is gone.

4. Where a lessee has entered on a new term of years because effective by renewal in accordance with the terms of the lease, the lessor cannot immediately thereafter enter judgment in ejectment under a warrant in the lease because of an alleged violation of a covenant, if it appears that the lessor, prior to the renewal, had failed to declare a forfeiture promptly after the commission of the alleged acts of forfeiture.

5. Where the lessees of a portion of the premises have covenanted to conduct a restaurant on the part demised to them in a way not obnoxious to the lessor, who resided in the other portion, and no arbiter is appointed to pass upon a dispute as to such a question, the lessor cannot enter judgment against the lessees merely upon her allegation that the covenant has been violated, and if she does so, the judgment will be opened so that the matters in dispute may be submitted to a jury.

Rule to open judgment.   C. P. Schuylkill Co., July T., 1924, No. 370.

*M. M. Burke, P. H. Burke* and *M. J. Ryan,* for rule; *R. P. Swank,* contra.

Snyder *v.* Manjon et al.

BERGER, J., Feb. 16, 1925.—This is a rule to open a judgment entered by amicable action in ejectment and confession under a warrant of attorney in a lease. The plaintiff is the owner of a house and lot at No. 15 East Centre Street, Mahanoy City, Pa., a portion of which, by a lease in writing bearing date May 17, 1919, she demised to George Manjon and James A. Goodis, to be used as a restaurant for a term of five years or from Jan. 1, 1919, to May 31, 1924, with the privilege of renewal on their part for an additional terms of five years upon the same terms and conditions. The part of the building reserved by the lessor was occupied at the time of the execution of the lease, and since, as her place of dwelling, and the demised part had been used as a restaurant three or four years immediately preceding the execution of the lease, by tenants whose good-will and fixtures were bought by the lessees. The amicable action in ejectment and confession of judgment was entered June 2, 1924. It was supported by an affidavit of default, which avers substantially (1) that the term had ended because of the neglect and failure of the lessees to observe and comply with the terms of the lease; (2) that a quit notice in writing had been given to the lessees three months prior to May 31, 1924; (3) that the lessees had neglected, failed and refused to keep the demised premises during the term in a clean and sanitary condition; and (4) that, as the result of the neglect of the lessees to keep the demised premises in a clean and sanitary condition, and because of the manner in which their business was conducted, their tenancy had become unreasonably obnoxious to the lessor, and had unreasonably interfered with her comfort and the enjoyment by her of the part of the property reserved for her own use. The material parts of the lease are as follows:

*(a)* It is further agreed by the parties hereto that the parties of the second part shall give three months' notice previous to the expiration of this lease of their intention to remove from and vacate said premises, and that three months' notice previous to the expiration of said term shall be given to them to quit the said premises, and shall deliver up the possession of said premises in the same good order and condition as when they took possession, reasonable wear and tear and unavoidable accidents happening by fire or other casualty excepted, whether such may happen by fire, water or act of God. In default of notice to be given as aforesaid, this lease shall be considered as renewed for a like term as the original term, and so on from term to term until notice is given for a removal.

*(b)* And the parties of the second part hereby agree that they will keep the premises in a clean and sanitary condition and remove all ashes and garbage which may accumulate on the premises during the said term, and upon their failure to do so, they agree to pay the party of the first part the cost and expense of having such removed, which amount shall and may be recovered the same as rent in arrear.

*(c)* And if default shall be made in the payment of the rent or any part thereof for a period of fifteen days after the same shall become due, or if the said second parties shall evade or break, or attempt to break or evade, any of the conditions or agreements of this lease, the party of the first part, her heirs and assigns, may forfeit and annul the unexpired portion of this lease and may enter upon and repossess the said premises without process of law and without notice whatever.

*(d)* And, further, the said second parties hereby agree that upon a breach of any of the conditions of this lease, they authorize any attorney of any court of record to confess an amicable action of ejectment and confess judgment of ejectment therein for the premises herein mentioned and described;

Snyder *v.* Manjon et al.

and authorize the immediate issuing of a writ of *habere facias possessionem* with clause of *fi. fa.* for costs, without asking leave of court.

*(e)* It is further understood and agreed by and between the parties hereto that if at any time during the continuance of this lease the conduct of the business shall become unreasonably obnoxious to the party of the first part, in such manner as to unreasonably interfere with her comfort and enjoyment of the part of the premises reserved by her, then this agreement shall, at the option of the party of the first part, become null and void.

The lessor, in entering the amicable action in ejectment and confession of judgment, proceeded upon the theory, as is shown by the affidavit of default, that she could terminate the lease at the end of the term by a notice to quit, given three months before the expiration of the term, or at any time during the term, either by proof that the lessees had broken and evaded, or attempted to break and evade, the conditions or agreements of the lease, or arbitrarily, upon the allegation that the lessees conducted their business in a manner so unreasonably obnoxious to her as to unreasonably interfere with her comfort and her enjoyment of the part of the premises reserved for her own use.

The *habendum* of the lease provides, *inter alia*, that upon the expiration of the term of five years on May 31, 1924, the lessees have "the privilege of an additional term of five years upon the same terms and conditions as this lease." The provision in the lease that in default of notice given three months before the expiration of the term, on the part of the lessees, of their intention to vacate, and, on the part of the lessor, of her intention to require delivery of possession at the expiration of the term, the lease shall be considered as renewed for another five-year term, must be construed in connection with the words giving the privilege of renewal to the lessees. So construed, the lessor could only terminate the lease by notice given three months before the expiration of the term, in the event that the lessees had failed to give notice three months before the expiration of their term of their intention to vacate the premises. On failure of both parties to give notice of their intention, the lease would renew itself by holding over; and the giving of notice by the lessees of their intention to hold over precluded the lessor from ending the term merely by notice.

The defendants, after the entry of judgment against them, filed a petition to open the judgment, averring that they had fully complied with all the terms, conditions and agreements of the lease; that they had not committed any of the acts of forfeiture alleged in the affidavit of default; and that they had entered upon a new term of five years on June 1, 1924, by virtue of notice of their intention to renew, given to the lessor Feb. 7, 1924. The lessor made answer to the petition, denying all the material averments therein contained, and both parties, by the depositions of many witnesses, have endeavored to support their respective contentions. The plaintiff, in seeking to enforce the forfeiture of the lease, is bound by the rule applied in Craig et al. *v.* Cosgrove, 277 Pa. 580, 584, which is as follows: "As such a forfeiture clause is operative only at the option of the lessor, the lease continues a valid obligation until he declares it forfeited, and unless he acts promptly, his right to do so is gone. 'The rule undoubtedly is that the right to declare a forfeiture must be distinctly reserved; that the proof of the happening of the event on which the right is to be exercised must be clear; that the party entitled to do so must exercise his right promptly; and that the result of enforcing the forfeiture must not be unconscionable:' Thompson *v.* Christie, 138 Pa. 230, 249; and see Casinghead Gas Co. *v.* Osborn, 269 Pa. 395, 399; Ray *v.* Natural Gas Co., 138 Pa. 576; also, McKean N. Gas Co. *v.* Wolcott, 254 Pa. 323;

Kirch v. Crawford, 61 Pa. Superior Ct. 288, 293; Homet v. Singer, 35 Pa. Superior Ct. 491."

The lessor is now seventy-six years of age, and in a nervous condition since the year 1918. Every winter since then she has been away from the demised premises, at least partly, because of her state of health. A part of the premises which she demised was the eastern half of the warehouse or stable on the rear of the lot, which the defendants used for storage, and as a place in which to deposit garbage, pending its removal three times a week. The garbage was evidently accessible to stray cats, and at various times during the term of the lease offal from dressed chickens and other offensive matter was carried by them on the open lot. From this offal and the garbage in the stable, and by an excessive storage of empty milk cans in the defendant's yard, offensive odors at times were emitted, to the annoyance of the lessor and others in the neighborhood. A delay in making necessary repairs to a toilet, and in promptly repairing blocked drains, also caused obnoxious odors to arise, much to the lessor's annoyance. The restaurant conducted by the defendants was a day and night restaurant, so that the occasional chopping of wood at night for the stoves, the moving of chairs and tables about when cleaning the restaurant, and an occasional unruly, quarrelsome or fighting customer, were other causes of annoyance. Beginning with the tenancy of the defendants in 1919, the lessor, the plaintiff, complained to them quite frequently of the obnoxious odors, the unclean and unsanitary condition of the yard or lot, and because the demised premises had at one time become infested with red ants and roaches. The defendants gave heed to all these complaints and proceeded, more or less promptly, from time to time as they were made, to remedy them. The rent for the premises was payable monthly in advance, and was so paid until the judgment of ouster was entered, June 2, 1924, and since then, under an agreement that the acceptance of the rent should not prejudice the plaintiff's rights. The plaintiff did not at any time during the tenancy, either by word or act, avail herself of the privilege of forfeiture. The notice to quit was in the ordinary form, and alleged no forfeiture. Until the amicable action in ejectment was entered, the defendants had no notice of forfeiture, and when it was entered, a new term of five years had just become effective by renewal in accordance with the terms of the lease. Under the rule laid down in Craig et al. v. Cosgrove, 277 Pa. 580, the lessor could not, under the circumstances of this case, forfeit the lease for the breach of any of its conditions by the lessees because of her failure to declare a forfeiture promptly after the commission of the alleged acts of forfeiture.

The lessees agreed that if their business was conducted so as to become unreasonably obnoxious to the lessor, or in such manner as to interfere unreasonably with her comfort and enjoyment of the part of the premises reserved for her own occupancy, the lease should, at the option of the lessor, become null and void. Thus the question arises whether the lessor could, upon the mere allegation that the business of the lessees had become unreasonably obnoxious to her and unreasonably interfered with her comfort and enjoyment of the part of the premises reserved, terminate the lease, or whether her good faith in so doing is open to question by court and jury. The lessees, in effect, agreed to conduct their restaurant in a manner so satisfactory to their lessor as not to become obnoxious to her in an unreasonable degree, but since no arbiter was designated to pass upon that question in case a dispute arose, the question here presented is not whether the lessor ought to have been satisfied with the business of the lessees and their manner of conducting it,

but whether her objections are made in good faith or out of mere caprice: Williams et al. v. Notopolos, 259 Pa. 469, 476. A careful consideration of all the evidence leads us to the conclusion that the good faith of the lessor in annulling the lease should be submitted to a jury; hence, the judgment is opened.

And now, Feb. 16, 1925, rule absolute. Judgment is hereby opened and the defendants are permitted to make defence.