Reilly *v.* City Deposit Bank and Trust Company, Appellant.

Argued May 6, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Arthur B. Van Buskirk,* with him *John C. Bane, Jr.* and *Reed, Smith, Shaw & McClay,* for appellant.

*Clyde A. Armstrong,* of *Thorp, Bostwick, Reed & Armstrong,* for appellee.

OPINION BY PARKER, J., July 18, 1935:

The plaintiff has a final decree in equity by a court of common pleas directing the defendant to release certain land of the plaintiff from the lien of a mortgage and the defendant has appealed. We are called upon to construe a partial release clause in the mortgage.

The facts essential to a determination of the issue are all contained in the findings of fact by the court below and these findings are not in dispute. On January 7, 1930, R. A. V. McCaughan gave to John E. Born a judgment bond secured by a mortgage, which was shortly thereafter assigned to the defendant trust company, on sixty-five building lots in the Borough of Wilkinsburg, Allegheny County. The bond provided that it should be payable "three years (3) from the date hereof [thereof], with the privilege of having released

at any time during the term of the mortgage from the lien thereof any one or all of the herein [therein] described lots of ground upon the payment of Eight Hundred and 00/100 ($800.00) Dollars per lot and accrued interest for each lot to be released." The mortgage recited this partial release clause in practically identical language. On May 12, 1931, the plaintiff, A. David Reilly, obtained a deed through the mortgagor, R. A. V. McCaughan, for lots 1, 2, and 246, described in the mortgage. Shortly prior to January 7, 1933, the due date of the mortgage, an agent of the plaintiff conferred with an agent of the defendant with reference to release of the lots on payment of $2,400, but did not make demand for release or tender and did not secure an answer to his inquiry until about January 20, 1933, when defendant informed plaintiff's agent that it would not release the lots for that consideration. On February 2, a legal tender was made to the defendant of $2,439.67, and a demand made for the release. A tender was repeated on February 3, 1933, when the sum of $2,450 was tendered and a request again made for the release. Interest had been paid on the entire mortgage to December 7, 1932, and the amount tendered on February 3, 1933, included interest from December 7, 1932, to February 3, 1933, on $2,400. Prior to September 25, 1931, defendant had released of record from the lien of the mortgage all but five of the lots covered thereby.

The mortgage contained a provision that, in case of default in payment or performance in any particular as therein provided for the space of thirty days, every sum to be paid should become due and payable forthwith and a writ of scire facias might forthwith be issued, while the bond contained a provision for the confession of a judgment at any time for a penalty in twice the principal sum, together with costs, attorney's commissions, etc., with a clause providing for the issuing of an execution in the event of a default for thirty days

as in the case of the scire facias. In short, the tenders and demands for release were made after the entire principal sum became due and payable and while interest was in default, but before the expiration of thirty days from the date such sums became due.

The appellee contends that by the terms of the bond and mortgage, the mortgagor or one claiming under him was entitled to a release at any time before foreclosure proceedings were consummated, or at least during the period of thirty days after the due date. The diligence of counsel and our own efforts have failed to disclose a decision of the appellate courts of this state construing partial release clauses in a mortgage and but one decision of a lower court has been found. "The extent of the right to partial release depends upon the construction of the intent of the release clause in each particular case": 41 C. J. 827. Naturally, our first inquiry is whether the demand for release and tender was made "during the term of the mortgage." The word "term" has a variety of meanings illustrated by the fact that it sometimes denotes a space or period of time to which limits have been set, while Blackstone (2 Comm. 144) said that the word "term" did not merely signify the time specified in a lease "but the estate also and interest that passes by that lease." One dictionary in common use gives twenty definitions of the word and another fourteen. It is therefore apparent that the exact meaning here intended must be determined from the context and the entire contract. Now, the release clause immediately follows the provision in the papers fixing a date for payment of the obligation. The principal was "payable three (3) years from the date hereof [thereof], with the privilege of having released at any time during the term of this mortgage," etc. The parties were not satisfied to stop with the statement that the release might be obtained at any time, but further limited it by what followed. It is pertinent to inquire why this phrase was added if it was

the intention to include a time extending until the equity of redemption was discharged. It is a cardinal rule for construction of deeds that no part shall be rejected if it can be given a meaning: Wager v. Wager, 1 S. & R. 373, 375. As counsel for the appellant suggests, if the parties to the mortgage intended that the right to partial release should survive and not expire until foreclosure, they needed no words of limitation. In common parlance, we employ the word "term" in connection with bonds and mortgages to describe the length of time the obligation has to run as fixed by the particular instrument. For example, bonds and corporate mortgages are commonly described as twenty or thirty-year term obligations. If anyone were asked what the term of this mortgage was, we believe the invariable reply would be that it was three years. We are of the opinion that the clear words of the papers fixing the rights of the parties limited the right to a release by the time when the mortgage became due and payable.

We are not impressed with the suggestion that the bond and mortgage were not due until after the thirty-day period of default. These clauses concerned only the remedy and did not in any respect extend the time when the mortgagor was in duty bound to discharge the obligation. In scire facias sur mortgage the proceeding is wholly statutory: Federal Land Bank of Baltimore v. King, 294 Pa. 86, 143 A. 500; and by the Act of 1705 (21 PS 791) a mortgagee is permitted to employ that remedy after twelve months. When a mortgage is payable in installments the mortgagee cannot proceed by scire facias to recover each installment as it becomes due, but may bring ejectment or proceed on his accompanying bond: Fickes v. Ersick, 2 Rawle 166. In Woodbury v. Allegheny & K. R. Co., 72 Fed. 371, 381, it was held that the stay clause in the statute of 1705 applied only to a scire facias sur mortgage and had no application to a bill in equity to foreclose a corporate

mortgage. The provision in this mortgage was but a waiver of a statutory period fixed by statute and such waivers may be and are almost invariably contained in mortgages: Huling v. Drexell, 7 Watts 126; but it did not extend the time for payment. It related only to a particular procedure.

The construction which we have placed upon this clause is supported by further considerations. The rights and duties of the parties were fixed by the bond and mortgage. The mortgagee agreed that he would, during the term of the mortgage, release certain premises, but in the same instrument the mortgagor not only agreed to pay the principal at the expiration of three years but to pay the interest monthly. This he refuses to do, but at the same time claims the right to compel the mortgagee to give a release. We cannot consider the respective undertakings of the parties to be separate and independent covenants, but they are reciprocal provisions in the same instrument and are to be read and construed together. "Specific performance is a matter of grace and not right and rests in the sound discretion of the court and the power of the court will not be exercised in favor of a complainant who fails to show either full performance on his part or that he offered to discharge the duty imposed upon him by the contract": Girard Mammoth C. Co. v. Raven Run C. Co., 275 Pa. 439, 443, 119 A. 495. He who seeks equity must do equity. "He who seeks to compel performance by others must show his right to ask it by showing his own performance of all that is preliminary, and his readiness to perform what is coincident to that which he asks done by others": Mints' Appeal, 128 Pa. 163, 173, 18 A. 509. The situation disclosed by the admitted facts indicates to us that the plaintiff was not entitled to a decree of specific performance.

The conclusions which we have just stated are supported by the rulings of the appellate courts of a num-

ber. of other states. In Ryan v. Rizzo, 114 Conn. 467, 159 A. 272, a mortgage provided for its payment in two installments, and on the day the first installment became due a demand was made for release. It was held that the mortgagor could not make such claim while he was in default. That decision went somewhat further than we are required to go in this case. In Reed v. Jones, 133 Mass. 116, the default occurred in the payment of the interest, taxes, and also the principal sum, and demand and tender were not made until after the expiration of the time for the payment of the principal. It was held that a bill could not be maintained to enforce a release. Also, see Gillies v. Dyer, 93 N. J. Eq. 348, 116 A. 704, and Avon by the Sea L. & I. Co. v. Finn, 56 N. J. Eq. 805, 41 A. 366. In Vawter v. Crafts, 41 Minn. 14, 42 N. W. 483, a contrary conclusion was reached. The court below relied upon a common pleas case, Land Co. v. Blackmore, 59 P. L. J. 553. The same case had been before the court at another time and is reported at 58 P. L. J. 410. A reference to the earlier decision discloses the fact that there the right to release was interwoven with a privilege of making payments *at any time* in a definite amount and releasing portions of the mortgaged premises at a fixed rate, and there was no limitation "to the term of the mortgage." In any event, we could not follow that case for the second reason stated above.

The rights of the plaintiff here cannot rise higher than those of the original mortgagor for he is claiming through and under him. A party to a contract may not sever the provisions so as to deprive the other party of rights by conveying to a third party unless it is so provided in the writing. For the reasons stated, the decree of the lower court must be reversed.

The decree of the court below is reversed and it is directed that the bill be dismissed at the costs of the appellant.