Reilly, Appellant, *v.* City Deposit Bank
and Trust Company.

578

Argued April 8, 1936.   Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN and STERN, JJ.

*Clyde A. Armstrong*, of *Thorp, Bostwick, Reed & Arm-
strong*, with him *Donald W. Ebbert*, for appellant.

*John C. Bane, Jr.*, with him *Arthur B. Van Buskirk*
and *Reed, Smith, Shaw & McClay*, for appellee.

OPINION BY MR. JUSTICE MAXEY, June 26, 1936:

Appellant seeks specific performance of a partial re-
lease clause in a mortgage originally covering the three
building lots which he owns, together with sixty-two oth-
ers in what is known as the Princeton Park Plan of Lots
in Wilkinsburg, Allegheny County.   The chancellor
found in his favor and the court in banc entered a de-

cree ordering defendant to release the lien of the mortgage upon payment by plaintiff, the appellant, of the proportional sum stipulated in the mortgage for release of each lot covered thereby. The Superior Court (118 Pa. Superior Ct. 222, 179 A. 886) reversed the lower court and dismissed the bill. This court allowed an appeal.

The bond, and mortgage securing it, dated January 7, 1930, were in usual form and provided for payment by the mortgagor of the sum of $47,500 three years from date, "with the privilege of having released at any time during the term of this mortgage from the lien thereof any one or all of the herein described lots of ground upon the payment of" $800 per lot plus accrued interest thereon "for each lot to be released." The instruments contained standard conditions providing for acceleration in case of default in payment of interest, insurance or taxes prior to maturity, and for the issuance of a sci. fa. and execution in case of default for a period of thirty days.

The mortgage was assigned to the appellee bank soon after its execution. Prior to November, 1931, a few of the lots had been released from the lien of the mortgage in accordance with the above-quoted clause. Taxes being then unpaid, the bank entered judgment on its bond and issued execution, but for some undisclosed reason execution was stayed and the bank, on December 16, 1931, released its lien as to all but five of the lots, of which three are the plaintiff's, involved herein. Thereafter plaintiff's deed to these three lots was recorded. Since the mortgage was placed, plaintiff's lots have been improved by the erection of duplex dwelling houses thereon, much enhancing their value. Plaintiff made no request of the bank to release the lots until a few days prior to January 7, 1933, the date of maturity, when his agent made inquiries of appellee as to whether it would release the lots. There is some dispute as to whether the bank's dilatory tactics amounted to a waiver of its right to insist on an exercise by the owner, prior to maturity of the

mortgage, of his right to secure a release. In our view of the case this is immaterial. Plaintiff made no tender of the proper amount to secure a release until February 2d or 3d, 1933, twenty-six or twenty-seven days after maturity of the mortgage, and default in payment of the balance due on the mortgage, about $42,000, had taken place. When the tender was made foreclosure proceedings had not been begun. The tender was refused and plaintiff filed his bill.

The opposing views of the court of common pleas and of the Superior Court are concisely set forth in the following excerpts from the opinions, respectively, of Judge ELDER W. MARSHALL and of Judge PARKER. The former said, inter alia: "The term of a mortgage is not necessarily coextensive with the period for which the money is lent. Thus, for example, if a mortgage calls for repayment of the debt 'at the expiration of five years,' with a provision for acceleration in case of failure to pay interest or taxes, a foreclosure and sale within the five-year period unquestionably would foreshorten the term. On the other hand, many mortgages are permitted to remain open for long periods beyond the designated maturity dates. If the word 'term' be limited to the period specified in the instrument, what name remains to be applied to the period from the date of the mortgage until final payment or sale? In Pennsylvania, equity of redemption is an inseparable incident of every mortgage and endures until the mortgage is paid or foreclosure sale occurs. During the period of its existence the parties stand in the relation of mortgagor and mortgagee, and their respective rights are determined accordingly. In reality, therefore, the term of a mortgage is the duration of such relationship, that is, the period during which the mortgage exists. Webster's New International Dictionary defines 'term' as 'the time for which anything lasts,' and every mortgage lasts from the date it is given until the date it is paid or the equity of redemption extinguished."

Judge Parker, speaking for the Superior Court, said, inter alia: "The word 'term' has a variety of meanings illustrated by the fact that it sometimes denotes a space or period of time to which limits have been set, while Blackstone (2 Comm. 144) said that the word 'term' did not merely signify the time specified in a lease 'but the estate also and interest that passes by that lease.' One dictionary in common use gives twenty definitions of the word and another fourteen. It is therefore apparent that the exact meaning here intended must be determined from the context and the entire contract. Now, the release clause immediately follows the provision in the papers fixing a date for payment of the obligation. The principal was 'payable three (3) years from the date hereof [thereof], with the privilege of having released at any time during the term of this mortgage,' etc. The parties were not satisfied to stop with the statement that the release might be obtained at any time, but further limited it by what followed. It is pertinent to inquire why this phrase was added if it was the intention to include a time extending until the equity of redemption was discharged. It is a cardinal rule of construction of deeds that no part shall be rejected if it can be given a meaning: *Wager v. Wager,* 1 S. & R. 373, 375. As counsel for the appellant suggests, if the parties to the mortgage intended that the right to partial release should survive and not expire until foreclosure, they needed no words of limitation."

We do not attach to the phrase, "during the term of this mortgage" the restrictive significance that is attached to it in the excerpt last cited. Obviously the mortgagee would not agree that the lots might be released *at any time* in the long future by the payment of $800 per lot released. There would have to be *some* limitation of time. The limit was "any time during the term of this mortgage." This still leaves open the question what was meant by "term of this mortgage." As Judge Parker points out in his opinion, there are at least

twenty dictionary definitions of the word "term." One definition which is found in both Webster's New International Dictionary and Corpus Juris is: "The time for which anything lasts." We do not reject the phrase used as meaningless. We impute to it, in view of its admitted flexibility, a meaning which best comports with the apparent intentions of the parties and which would be most likely to bring about a just result.

There are certain rules for the interpretation of statutes which are equally applicable to the interpretation of contracts between individuals. Among them are these: "To adopt that sense of the word which best harmonizes with the context and promotes in the fullest manner the policies and objects of the legislature": 25 R. C. L. 988, section 234. "When the design of the legislature is not clearly apparent, it is always to be presumed that a statute was intended to have the most reasonable and beneficial operation that its language permits. And when a statute is ambiguous in terms or fairly susceptible of two constructions, the injustice, unreasonableness, absurdity, hardship, or even the inconvenience which may follow one construction may properly be considered and a construction of which the statute is fairly susceptible may be placed on it that will avoid all such objectionable consequences and advance what must be presumed to be its true object and purpose": 25 R. C. L. 1017-18, section 255. Substitute "parties" for "legislature," and "contract" for "statute" in the above canons of interpretation and they are applicable here.

The sixty-five lots covered by the lien of the mortgage were apparently a real estate project on which the owner had borrowed money for the purpose of developing the enterprise. Both the borrower and the lender evidently expected that the lots would be sold in three years and that at least $800 would in that period be paid on each lot for its release. This would yield $52,000. It was manifestly a matter of indifference to the appellee bank

(herein referred to as the mortgagee) whether the entire debt was paid off in one lump sum or in installments as the lots were sold. Evidently the latter method of payment was what was anticipated. It is also apparent that while "three years from date" was the time *formally* set out as the due date of complete payment, the mortgagee was indifferent as to whether complete payment was made then or at a reasonable time thereafter. This indifference is indicated by the fact that it did not at precisely the end of three years from the date of the mortgage take any effective steps to collect the balance then due. Late in 1931 taxes were unpaid on this real estate and as a result of this default, the mortgagee entered judgment on its bond and issued execution, but this execution was stayed. As we have already pointed out, the mortgagee released on December 16, 1931, its lien on all of the sixty-five lots except five, including the three lots of appellant.

The mortgagee thus permitted "the time for which" the mortgage "lasted" to be more than three years. It could have ended the life of this mortgage when the default occurred within less than two years after the mortgage was executed. Had it done so, that would have ended appellant's right to have his lots released from the lien of the mortgage by the payment of $800 for each lot released. In such a situation the appell*ant* could not have contended successfully that though the mortgage had been foreclosed and terminated before the end of the three-year period stipulated, nevertheless the "term" of the mortgage continued until the end of the three-year period. It is equally illogical for the appell*ee* to contend that notwithstanding the fact that it permitted the mortgage *to exist beyond the three-year period,* its term ended exactly three years after its date. A man might be elected or appointed to a position for "the term of three years." If the creating authority permits him to "hold over" and administer his office for a certain length of time after the period formally fixed (as often happens),

it could not be held that his "term of office" was *only* three years. Definite terms of office or of anything else relating to time can be either lengthened or abbreviated. William Henry Harrison was elected president for "the term of four years"; his actual term was one month. An administrator's "term of office" is coextensive with his administration of that office. Appellant correctly contends that the term of the mortgage in the instant case was coextensive with the existence of the mortgage.

Appellant had the right to demand a release of his lots from the lien of the mortgage by paying $800 per lot, plus accrued interest, at any time during the existence of the mortgage, whose nominal term was three years. The existence of this mortgage could have been terminated by the appellee at the end of three years or even sooner. Instead of being so terminated, it was permitted by the appellee to continue to exist. When appellant took appropriate action to have his lots released from the lien during that period of the mortgage's existence, he was exercising a right of his that had not yet been taken away from him by any act of the appellee or by operation of law.

There is a close analogy between the three-year term mentioned in the mortgage and terms mentioned in other contracts where time is not made, by law or by the parties' stipulation, *the essence of the contract*. Where the passage of time admits of compensation, as it does here (for the interest charge continued), time is not ordinarily the essence of the contract. In *Decamp v. Feay*, 5 S. & R. 323, this court held that an agreement, after nonpayment on the day stipulated, that if the whole sum should not be paid at a certain day, the prior payments should be forfeited and the original bargain be at an end, does not give any additional right to rescind. In that case Mr. Justice GIBSON, speaking for this court, said: "Where time admits of compensation, as it perhaps always does, where lapse of it arises from money not hav-

ing been paid at a particular day, it is never an essential part of the agreement."

This interpretation of the contract between the parties "advances the true object and purpose" of the contract and "avoids an unreasonable and unjust result." No possible harm can be inflicted on the appellee by such an interpretation. It will receive by releasing appellant's lots, $800 plus accrued interest, for each lot, and that is all it ever expected to receive or had any right to receive.

In *Union Trust Co. of Pittsburgh v. Hugus,* 258 Pa. 479, 102 A. 170, which was a case involving a release of individual lots covered by a blanket mortgage, this court granted relief to the individual lot owners even after default, foreclosure, and sheriff's sale of the entire tract had occurred. There the mortgage covered 134 lots and reserved to the mortgagor and his assigns the privilege of having the lots released upon payment of a specified sum per front foot, varying with the location of the property. A large balance remaining due on the mortgage debt, the mortgagee's assignee entered judgment on the bond and the property was sold under a fi. fa. The owner of 13½ lots then filed a petition to open the judgment and set aside the sale on the ground that, whereas judgment had been entered for $15,512.28, the actual balance due the mortgagee was the sum of only $2,473.40, the lot owner claiming the right to show the actual balance of the debt due, as the limit of liability to which his land should be subjected. This court in effect reversed the decree of the lower court, holding that in no event could the lots in question be held for a greater liability than the proportional charge upon them on a front-footage basis, as set forth in the mortgage. Mr. Justice FRAZER said at page 483: "Under the terms of the mortgage a purchaser of one or more lots had a right to demand a release from the mortgage upon tender of the proper amount, computed on the basis of the front-foot price set out in the encumbrance. Any other construction of the mortgage would render the latter provisions

useless, by conferring upon the mortgagee the right to demand payment of the entire indebtedness as a consideration for the release of a single lot, notwithstanding the amount due on the mortgage was out of all proportion to the value of the property. The lots owned by petitioner should not therefore be subjected to a higher charge than was represented by the amount due computed at the front-foot price, aggregating $7,423.20."

There are but few decisions in other jurisdictions on the question presented to us here. In *Vawter v. Crafts* (Minn.), 42 N. W. 482, a mortgage upon a tract of land to secure payment of a sum of money at certain dates contained an agreement that the mortgagor should plat the land into lots, of uniform size, and that the mortgagee should release any of the lots when thus platted, upon payment of a specified sum for each lot. The mortgage also contained the usual condition that, in case of default in any of the covenants or conditions of the mortgage, the mortgagee might sell the mortgaged premises, and out of the proceeds retain the amount due on the mortgage. It was held that the covenant as to partial releases ran with the land, and inured to the benefit of the grantee of the mortgagor, who purchased one of the lots into which the land was platted; also that the right to a release was not terminated by a default in the payment of the sum secured by the mortgage, but continued in force until the mortgagee had fully executed the power by sale of the mortgaged premises.

In *Penna. Steel Co. v. New York City Ry. Co.*, 198 Fed. 721, it was held that a guaranty in a lease of a street railroad of the payment of dividends to stockholders of the lessor during the "term of this lease" is to be construed as meaning during the existence of the lease, and not during the term for which it was made.

Appellee cites the case of *Ryan v. Rizzo* (Conn.), 159 A. 272, which holds that a release clause was not intended to give the mortgagor right to release a parcel of land after the due date of the money secured by the

mortgage. However, this opinion states: "Cases may be found in which it has been held, in the absence of equitable considerations, that the privilege of a partial release survived a default on the part of the mortgagor when it appeared from the language of the covenants in the mortgage that such was the intention of the parties. In a number of cases . . . it was held that the release covenant ran with the land, and it was enforced after default by the original mortgagor in favor of the purchasers of lots into which the larger tract covered by the mortgage had been subdivided. In cases where, as here, a mortgagor was seeking a specific performance of the release covenant, he has been denied equitable relief when he was in default upon his own obligations under the mortgage." This case differs from the case at bar. In this case it was the mortgagor himself who was seeking to have part of the lands released from the lien of the mortgage. The case of *Gillies et al. v. Dyer et al.,* 93 N. J. Eq. 348, 116 A. 704, cited by appellee, is also a case where the original mortgagor sought a release of a portion of the property after his right to release had expired under the mortgage, and he had only an equity to redeem the property. The cases of *Avon by The Sea Land & Improvement Co. v. Finn,* 56 N. J. E. 804, 41 A. 366, and *Reed v. Jones,* 133 Mass. 166, both of which are cited by appellee, are, in our judgment, easily distinguishable in their facts from the case at bar.

Applying accepted rules of interpretation to the contract between the parties in this case, we come to the conclusion that the phrase "term of the mortgage" means what the court of common pleas said it meant, to wit, "the duration of relationship, that is, the period to which the mortgage exists."

To sustain the position of the appellee would impose upon the mortgagor's assignees, the purchasers of lots, a forfeiture which the circumstances of the parties and protection of the mortgagee's security interest did not require. The established principle that equity abhors a

forfeiture is applicable to the facts in the case at bar. "In every case where a forfeiture is demanded, on the delinquency of a contracting party, the construction ought to be strict. Nothing should be taken by intendment, so as to draw the party into a penalty," said DUNCAN, J., in *Stafford v. Walker*, 12 S. & R. 190, 195. See also *Lehigh Valley Coal Co. v. Searle*, 248 Pa. 385, 94 A. 74; *Brown v. Vandergrift*, 80 Pa. 142. "The rule undoubtedly is that the right to declare a forfeiture must be distinctly reserved": *Thompson v. Christie*, 138 Pa. 230, 249, 20 A. 934. An interpretation of the instruments before us, which would have the effect of depriving the lot owner of his property, is not demanded. If, as the record indicates, the mortgagee or his assignee chose to release lots, other than those held by appellant, for little or no consideration, hoping to salvage his entire debt out of plaintiff's lots and the other two not released, this should not prejudice plaintiff's ownership of his three lots, so as to require his property to bear a disproportionate share of the burden of the entire debt.

What we have said in effect disposes of the contention that appellant, having made his tender after default in payment of the principal debt, can claim no equitable relief without showing performance of the covenant of his predecessor in title to pay the debt. It does not appear, however, that when plaintiff bought the lots he assumed the mortgage debt or any part of it. The land which he purchased was subject to the conditions of the grant, but he undertook no personal liability. No unconscionable conduct can be charged against him personally. "Whether the release privilege survives default depends, in the absence of equitable considerations, upon the intention of the parties, to be drawn from the language of the covenant read in the light of the other provisions of the contract and of surrounding circumstances at the time of execution": *Rosenberg v. General Realty Service, Inc.*, 231 App. Div. 259, 261, 247 N. Y. Supp. 461.

Here equitable considerations of compelling force manifest themselves.

The judgment of the Superior Court is reversed, and the decree of the court of common pleas is reinstated, costs to be paid by appellee.