**Filipczak v. Erie Forge Co. et al.**

*Gunnison, Fish, Gifford & Chapin,* for plaintiff.
*Andrew J. Nowak,* for defendant.

KITTS, P. J., November 29, 1943.—In this case Anna Filipczak, dependent widow of John Filipczak, seeks compensation for his death under the terms of the Occupational Disease Compensation Act of July 2, 1937, P. L. 2714. It is not in dispute that John Filipczak died June 11, 1939, as a result of pulmonary tuberculosis complicated by advanced silicosis. Nor is the dependency of claimant and her eight minor children in issue. Her claim was denied by the referee and by the Workmen's Compensation Board solely upon the ground that decedent's disability and death resulted from pulmonary tuberculosis, and that the silicosis was only a contributory or accelerating factor and not the "primary" cause of death. The action of the board must be reversed.

All the evidence in this case was produced by claimant. Defendant, although twice afforded an opportunity to produce testimony, declined so to do. The record establishes, without contradiction, that John Filipczak became totally disabled on January 2, 1939. For 14 years prior to that date, he had been in the employ of defendant as a chipper, which work required the use of a compressed air hammer to chip and clean off castings. Between 60 and 100 men doing the same type of work were employed in the same room. Only during the last two or three years that decedent worked were respirators or masks supplied to the employes.

On January 2, 1939, decedent was unable to complete his day's work because of illness. His family physician, Dr. F. S. Shubert, was called to see him the next day and found him gasping for air and having much difficulty with his breathing. Dr. Shubert made a tentative diagnosis of silicosis. From then on his condition deteriorated steadily until his death on June 11, 1939.

Following the filing of a claim petition by his widow, the present claimant, defendant made application for an autopsy. Upon obtaining the written consent of claimant, the referee appointed Dr. E. L. Armstrong, who performed an autopsy, together with Dr. Shubert, on December 9, 1939. A hearing was held before the referee on February 29, 1940, at which time all the evidence now before us was placed on record.

The significant findings of fact by the referee are those as to the result of the autopsy and the cause of death. In his sixth finding of fact the referee found:

"The autopsy revealed that the decedent's lungs were overshadowed by an advanced and diffuse tuberculous process, involving the greater portion of the lung tissue. In the areas that were comparatively free from tubercular invasion, however, the typical histological changes of advanced silicosis were demonstrated."

In his eighth finding of fact the referee stated: "The decedent's disability and death resulted from pulmonary tuberculosis. Any connection the silicosis had with the decedent's death was merely contributory, and was in no way the principal cause of death."

In his second conclusion of law the referee stated that "the death of the decedent was caused primarily by active pulmonary tuberculosis with silicosis only a contributory or accelerating cause", and disallowed compensation.

Upon appeal to the Workmen's Compensation Board, the board, after briefly reviewing the record, held:

"The claimant called three medical witnesses whose testimony, in our opinion, would justify an award under the Occupational Disease Act of 1937. Dr. F. S. Shubert stated definitely that the silicosis of which claimant suffered, and which was accompanied by active pulmonary tuberculosis, accelerated the death of John Filipczak.

"As we read section 5 of the Act of July 2, 1937, compensation is payable when death is caused primarily by silicosis, as distinguished from death when silicosis is a contributory or accelerating cause, and when death is the result of silicosis accompanied by active pulmonary tuberculosis. In our opinion if active pulmonary tuberculosis is present silicosis may be a contributory or accelerating cause. There is no requirement in the 1937 Occupational Disease Act that in this event silicosis be the principal cause of death."

The board then pointed out that defendant had erroneously relied upon the provisions of The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, which were not applicable since both the disability and the death antedated the effective date of that act. The board further pointed out that the findings of the referee were not so comprehensive and explicit as to disclose on what facts his ultimate conclusion rested and remanded the record to the referee for the purpose of giving both parties an opportunity to present additional medical testimony.

When the record was again before the referee on February 26, 1942, both sides stated that there was no further testimony to be offered and the referee, notwithstanding the criticisms of his findings in the board's opinion, and the statement as to the applicable law, thereupon republished his original findings of fact, conclusions of law, and disallowance verbatim.

Claimant again appealed to the Workmen's Compensation Board and the appeal was again assigned to Commissioner Knoll. On this appeal the board completely ignored what it had theretofore said when the case was first before it. It is impossible to reconcile the two opinions. The disallowance was sustained upon the ground that the death had not resulted "primarily" from the silicosis condition.

From this action of the board claimant has prosecuted the present appeal. Claimant contends that

where the record establishes, and the compensation authorities have found as a fact, that decedent suffered from advanced silicosis under the terms of the Occupational Disease Compensation Act of July 2, 1937, P. L. 2714, sec. 5, compensation is payable even though the principal factor in causing death was pulmonary tuberculosis; that, therefore, upon the record as it now stands, she is entitled to an award. The question is further raised as to whether the proceedings had before the compensation authorities are not invalidated by reason of the fact that the provisions of section 10 of the Occupational Disease Compensation Act of July 2, 1937, were not followed. The third contention is that claimant was so lulled into a sense of security by the first opinion of the Workmen's Compensation Board that, in all fairness, she should be permitted an opportunity to produce further medical and fact testimony. In view of the disposition which we are making of this appeal, it will not be necessary to consider this argument, although the record indicates much to give it weight.

As to claimant's objection to the failure of the compensation authorities to follow the provisions of section 10 of the Occupational Disease Compensation Act of July 2, 1937, it seems to us that its provisions are not properly involved in the case now before us. Section 10 provides that in all claims for silicosis "except in those cases wherein there are no controverted medical issues", the Workmen's Compensation Board, or referee, shall appoint a medical advisory board composed of one or more duly-qualified impartial physicians or surgeons. In the instant case, defendant offered no medical testimony. The medical testimony offered by claimant was all harmonious and consistent and, under such circumstances, we are of the opinion that there was no need for the board to appoint a medical advisory board to assist it.

There remains to be considered the principal question raised by appellant as to the proper construction of section 5(b) of the Occupational Disease Compensation Act of July 2, 1937, P. L. 2714, which subsection, insofar as it is here relevant, provides:

"Compensation shall be payable, as otherwise provided in this act, for total disability or death caused primarily (as definitely distinguished from a contributory or accelerating cause) by silicosis, anthracosilicosis, or asbestosis, or by silicosis, anthracosilicosis, or asbestosis when accompanied by active pulmonary tuberculosis or streptococcic infection of the lung."

Under the facts as found by the referee and affirmed by the board, decedent unquestionably suffered an advanced silicosis. The principal cause of death, however, was pulmonary tuberculosis with the silicosis contributing to it and accelerating his death. The compensation authorities have specifically so found, and these facts are not seriously challenged by either party.

When section 5(b) is considered in the light of the guiding principles of statutory construction laid down by the appellate cases and by the Statutory Construction Act of May 28, 1937, P. L. 1019, it seems clear to us that it was the intent of the legislature that where the principal cause of death is pulmonary tuberculosis, but where decedent also suffers from an advanced silicosis which contributes to and accelerates his death, the widow and dependent children are entitled to compensation. This is not a factual issue but purely a question of law.

Section 51 of the Statutory Construction Act provides:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions."

In ascertaining the intent of the legislature, the Statutory Construction Act directs that there may be considered, among other matters: (1) the occasion and necessity of the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; . . . (6) the consequences of the particular interpretation; (7) the contemporaneous legislative history; (8) the legislative and administrative interpretations of such law.

Section 52 of the same act provides that, in ascertaining the intent of the legislature, the courts may be guided by the following presumptions, among others: First, that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and, second, that the legislature intends the entire statute to be effective and certain.

Every one of these signposts erected by the Statutory Construction Act, which was passed at the same session of the legislature as the act here under consideration, points and points only to the interpretation that, under a fact situation such as the board has here found, the legislature intended the widow and dependent children to receive compensation.

Prior to 1937 occupational disease was not compensable in Pennsylvania, although under proper circumstances a common-law action could be had for the damages resulting from its ravages: Plazak v. Allegheny Steel Co., 324 Pa. 422. In 1937 the Governor of Pennsylvania appointed a committee to draft an occupational disease compensation law. A short time prior thereto, the National Silicosis Conference had been held under Federal auspices. This conference was appointed by the Secretary of Labor of the United States on April 15, 1936, and made its report on February 15, 1937, approximately the same time when the Governor of the Commonwealth appointed his committee to draft this act. Several of the members of the National Silicosis Conference were members of the Governor's com-

mittee. It is fair to infer, therefore, that the Governor's committee and the legislature did not ignore this most recent authoritative consideration of the subject.

The medical report of the National Silicosis Conference (U. S. Department of Labor, Division of Labor Standards, Bulletin no. 21, part 1) states at page 36:

"Silicosis in itself carries with it a very marked predisposition to tubercle infection. . . . In all the reports and writings on silicosis, the one thing that stands out is the extraordinary incidence of tuberculosis among silicotics. It is tuberculosis which disables and kills the silicotic. So voluminous is the evidence on this subject that a complete presentation of it here is out of the question."

Dr. F. G. Banting, the famous inventor of insulin, of the Banting Institute at Toronto, is quoted as stating:

"The outstanding infection that occurs with silicosis is tuberculosis. The pathologists rarely, if ever, find an advanced silicotic lung that is free from tuberculosis."

It is not necessary, however, to refer to these reports to establish the very close connection between silicosis and tuberculosis, for the present record establishes it abundantly and without contradiction, and it is significant to consider that evidence in determining what the compensation authorities must have meant in their finding that in the instant case the silicosis was a contributory and accelerating factor in the tuberculosis which was the principal cause of death. Dr. E. L. Armstrong, who was appointed by the referee to perform the autopsy, testified:

"A. It is well known and accepted that silicosis predisposes any individual to tuberculosis.

Q. That means it induces it or makes it active?

A. Reactivates it."

Dr. Armstrong further explained his thought:

"We do know from autopsy practically one hundred percent of people have healed tuberculosis lesions in the lungs, which, of course, we consider healed tuberculosis. Now we may have areas of the lung that could be reactivated by any chemical irritation of lung tissue, so in a case like this I would assume that the exposure to silicosis produced enough irritation in the lung tissue to reactivate a latent tuberculosis already present."

Dr. Armstrong further said:

"You do find the two occurring so frequently together that we seldom see advanced silicosis without active tuberculosis."

Finally, Dr. Armstrong testified:

"Q. And then, of course, the silica would aggravate it, I take it? It would aggravate the tuberculosis situation?

A. Yes, definitely.

Q. And would tend to result in death or fatality, the combination of the two?

A. Yes."

Dr. F. S. Shubert, decedent's attending and family physician, testified:

". . . That there was silicosis present which could be seen grossly at the autopsy and it could be seen on the slides by microscopic examination, and with the history of fourteen years' working in the sand blast, that silicosis produced in those lungs a fibrotic change which destroyed the actual breathing cells of the lungs, and that certainly has had something to do with the death. And where silicosis is present certainly tuberculosis germs will thrive very well, much more so than they do in a person's lungs where there is no silicosis present, and a person with silicosis certainly will develop pulmonary tuberculosis much easier than one who has no silicosis. The silicosis is a good medium for the growth of the tubercle bacillus; in that way the tuberculosis went haywire and of course eventually

the tuberculosis is what killed the fellow, but the silicosis had helped to do it, and that was the originator, as far as I am concerned."

This background throws considerable light on the occasion and necessity of the law and the mischief to be remedied. A further guide to interpretation is the consideration of the consequences of a particular interpretation. In section 52 of the Statutory Construction Act, the mandate is laid down that the courts should assume that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable.

In the recent case of Cammie v. I. T. E. Circuit Breaker Co. et al., 151 Pa. Superior Ct. 246, Judge Baldrige, speaking for a unanimous court, states (p. 252):

"Another well recognized rule of interpretation is that if there is an ambiguous provision in a statute, or if it is fairly susceptible of two constructions, the injustice, unreasonableness and inconvenience which may follow one construction may properly be considered, and the construction should prevail that will avoid objectionable consequences and advance what is presumed to be its true object and purpose: *Reilly v. City Deposit Bank and Trust Company*, 322 Pa. 577, 582, 185 A. 620."

Let us consider the effects of the two possible interpretations of this section in the light of the statute and the authorities. The interpretation given in the board's first opinion would be realistic, fair, and practical. It would provide compensation for the widows and dependent children of those in whose bodies silicosis has nourished the seeds of pulmonary tuberculosis, a frequently concomitant disease. On the other hand, to give section 5 (b) the interpretation given it by the board in the opinion here appealed from and to exclude from its benefits all silicotics where the principal cause of death is tuberculosis would work gross and unwar-

ranted hardship. As was stated by Dr. R. S. Anderson, "Silicosis uncomplicated rarely ever kills".

Certainly the only humane and reasonable interpretation to give the act is to include within its scope and interpretation that large number of silicotic deaths where the disease that ultimately causes the heart to stop is tuberculosis, and where tuberculosis is activated by and founded upon silicosis caused, as in the instant case, by long years of unprotected exposure to this grave hazard.

This conclusion is buttressed by the well-established principle which was laid down by the Supreme Court of this Commonwealth as early as Pater v. Superior Steel Co., 263 Pa. 244 (1919), and as recently as Ginther v. J. P. Graham Transfer Co. et al., 348 Pa. 60 (September 29, 1943), that The Workmen's Compensation Act is remedial and is to receive a liberal consideration. In Ottavi v. Timothy Burke Stripping Co., 140 Pa. Superior Ct. 389, 395, this principle is restated and the Superior Court points out that while this principle would not justify judicial extension of the terms of such a statute to embrace beneficiaries not comprehended therein, nevertheless, it is the duty of the court "to give full effect to the Legislative purpose and to give, not niggardly, but generously all the meaning the Legislature intended."

The other guideposts erected for our guidance by our legislature lead to the same conclusion. The Statutory Construction Act requires that "every law shall be construed, if possible, to give effect to all of its provisions". The only way in which all the provisions of section 5(b) can be effectuated is by the construction which we have here adopted. The relevant language of section 5(b) reads:

"Compensation shall be payable, as otherwise provided in this act, for total disability or death caused primarily (as definitely distinguished from a contributory or accelerating cause) by silicosis . . . or by sili-

cosis . . . when accompanied by active pulmonary tuberculosis . . ."

If the statute required that where silicosis and pulmonary tuberculosis combine to cause death the silicosis must be the primary as definitely distinguished from the contributory or accelerating cause, then the balance of the language in this paragraph, providing that compensation shall be payable if death is caused by silicosis accompanied by active pulmonary tuberculosis, would be meaningless surplusage. If the death did result primarily from silicosis and the tuberculosis were only a contributory or incidental cause, then compensation would clearly be payable on the ground that death was caused primarily, as definitely distinguished from a contributory or accelerating cause, by silicosis, and the legislature could place a period after that and stop. Certainly, however, the legislature must have attached some meaning to the added phrase that compensation shall be payable when death is caused by silicosis accompanied by active pulmonary tuberculosis. The legislature can only have meant that when the combination of these two diseases is the primary cause of death then the dependent widow and children are entitled to compensation. No other construction will give effect to all the provisions of section 5 (b).

Even if we regard these two clauses as conflicting, it leads to the same conclusion.

"Conflicting clauses in a statute, of course, must be reconciled if this can be done consistently with the main purpose of the enactment": Cammie v. I. T. E. Circuit Breaker Co., supra.

Section 63 of the Statutory Construction Act provides that where general and special provisions of a law are in conflict and cannot be reconciled the special provisions prevail, with certain exceptions not here relevant. In the instant case, the first clause, providing that compensation shall be paid when death is due primarily to silicosis, is the general clause, for it deals

with all possible cases of silicosis, while the second clause, providing that compensation shall be payable for silicosis accompanied by pulmonary tuberculosis or streptococcic infection of the lung, is a special provision dealing with only certain complications of silicosis.

We are of the opinion, however, that the clauses are not irreconcilable but are harmonious, and that it was the clear intent of the legislature that where death is caused as in the instant case by an advanced silicosis and pulmonary tuberculosis compensation is payable.

Defendant, in its reply brief, relies upon the case of Stauffer v. Hubley Mfg. Co. et al., 151 Pa. Superior Ct. 322. A careful consideration of that case will show that it is not only not controlling but is not relevant. In that case, the primary cause of death was diagnosed as streptothricosis, a rare branching fungus type of infection which resulted in an abdominal abscess. This was not caused or brought about by silicosis. The only effect which the silicosis had was to lower the decedent's vitality. This under the law was not enough to establish any causal connection whatever: Anderson v. Baxter et al., 285 Pa. 443.

After so holding, the Superior Court pointed out that they were not there called upon to lay down general rules that would govern all cases that may arise under the Occupational Disease Compensation Act and that it would be a mistake to attempt it. The court specifically points out that it is better to decide the cases as they arise on their own facts and that in the Stauffer case it was necessary only to hold that claimant's own medical testimony clearly established that the infection which caused Stauffer's death was not produced or brought about by silicosis.

There was no question of a tuberculous infection in that case, and the last part of section 5 (b), with which we are here concerned, was neither raised nor considered.

The other case relied upon by defendant is our case of Bujalski v. National Erie Co., 29 Dept. Reps. 890. This case, however, sustains claimant's rather than defendant's position. Bujalski had been a chipper, as was decedent, and exposed to silica dust until January 12, 1940. That case, therefore, comes under the more stringent provisions of the Act of 1939. The referee found him to be totally disabled as a result of silicosis and pulmonary tuberculosis and awarded compensation. Chairman Murphy, of the Workmen's Compensation Board, affirmed the award. Subsequently, Bujalski became affected by a gall bladder condition and, against the advice of his physician, was operated upon and died shortly thereafter. The referee found that the death was "not caused solely by tuberculosis or silicosis" and disallowed. This action was affirmed by Chairman Murphy and by this court.

In Silva v. Erie Forge Co., the present defendant, in which the action of this court, reported in 23 Erie 77, was affirmed by the Superior Court in 149 Pa. Superior Ct. 251, the exposure was practically identical with that in the instant case. Silva worked in the same room as decedent as a chipper for defendant. The medical testimony was substantially similar and the award was made for silico-tuberculosis. There is nothing in any of these cases in any way inconsistent with the interpretation here given to section 5(b) of the Occupational Disease Compensation Act of 1937.

Defendant further urges that section 5(b) should not be construed to make a claim compensable "merely because a workman may suffer a slight silicosis even though he has a serious tuberculosis condition which, according to all physicians, was the cause of his death". Suffice it to say that that is not this case, and we are not here called upon to pass upon that issue, for, as stated by the Superior Court in Stauffer v. Hubley Mfg. Co., supra, it would be a mistake to attempt to lay down general rules which will govern all cases that

may arise and it is better to decide the cases as they arise on their own facts. In the instant case we do not have a minimal or a slight silicosis. The compensation authorities have expressly found in the sixth finding of fact that "in the areas that were comparatively free from tuberculous infection, however, the typical histological changes of advanced silicosis were demonstrated". Not only is this finding supported by the evidence, but on the record no other finding would be possible. The record establishes that an autopsy is the best way to determine the existence and extent of silicosis. Dr. Armstrong, who performed the autopsy, used the language heretofore quoted in the referee's sixth finding of fact. He further testified under cross-examination by counsel for defendant:

"Q. Now a point I would like to have you explain is, how much greater was the deposit in this man's lungs than you would find in a normal individual?

A. Well, it was so great, the difference was so great, both from the cross-examination, that is observing the lungs and handling them, their texture and feel, and from the microscopic sections of the lungs, that it was outstanding and unmistakable, the difference.

Q. Would you say it was greater than the ordinary man working in a coal mine?

A. Oh, yes."

Dr. F. S. Shubert, who was present and assisted at the autopsy, in addition to the testimony hereinbefore quoted, stated:

"Q. Are you referring to the X-rays?

A. No, the slides, the sections that were made at the autopsy. Those sections found advanced silicotic changes throughout the lung tissue best demonstrated in the non-tuberculous areas. That is the most definite proof a person could have.

Q. You were present and saw those slides?

A. Yes, sir."

The board's finding, therefore, that decedent suffered an advanced silicosis is abundantly supported by the evidence. We are not unmindful of the rule that it is not the function of the courts to pass upon the credibility of witnesses and to weigh the evidence (Vorbnoff v. Mesta Machine Co. et al., 286 Pa. 199) and we are not undertaking so to do. We are accepting the board's findings of fact in their entirety.

It may here be noted, in passing, that defendant states in his reply brief that the referee found as a fact that the deceased workman did not suffer an exposure to a silicosis hazard. This can only be an inadvertent misstatement by defendant, for not only does a careful examination of the referee's findings of fact disclose no such statement, but, on the contrary, the board in its first opinion held, "The air in which he worked contained sand dust," and in its second opinion stated unequivocally that claimant had shown "That decedent during his lifetime worked in a department of defendant's plant wherein a silica hazard existed." While these are not formal findings by the board, similar factual statements in the text of the board's opinion have not infrequently been treated by the appellate courts as findings of fact. See McClelland v. Baltimore & Ohio R. R. Co., 137 Pa. Superior Ct. 158, 163. It may also be noted, in passing, that decedent worked in the same room of the same defendant's plant as did Silva in Silva v. Erie Forge Co., supra. No useful purpose would be served after the lapse of close to five years from the date of decedent's total disability and death in remanding the record to have the board put in more formal shape its finding on this point. The widow and her eight dependent children have already been too long deprived of the compensation to which, as a matter of law, they are entitled.

This is one of the comparatively rare cases where, accepting all of the board's findings of fact, it follows as a matter of law that the disallowance was incorrect

and that an award should have been made. The question then arises whether the court has the authority to enter such a judgment, or whether the record must be remanded to the compensation authorities for the entry of the only judgment possible under our rulings. The cases are clear that we are under no compulsion to go through the senseless form of remanding the record for the entry of an award, since all the facts necessary to form the basis of the award have been found by the compensation authorities and are before us.

In a very recent similar situation the Court of Common Pleas of Berks County in Buck v. Arndt, C. P. of Berks County, June term, 1943, no. 35, reversed a disallowance entered upon the board's erroneous conclusion that the established facts did not constitute an accident and held:

"The record shows that the claimant has suffered an accidental injury compensable under the compensation laws of Pennsylvania. The exceptions, therefore, are well taken, and the appeal must be sustained. In so ruling we are not disturbing the board's finding of facts, which are all contained in paragraph 4 of its opinion. The reversal is solely upon a question of law, raised by claimant's exceptions; and it is a question of law that does not involve the credibility or competency of the evidence, or its sufficiency to support the board's finding of fact: Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 208-9. The provision of the Act of June 21, 1939, P. L. 520, sec. 1, 77 PS §879, for a return to the board of the record for further hearing and determination, if the court shall have sustained any exception to the board's finding of fact, is therefore inapplicable: Berlin v. Crawford, 86 Pa. Superior 283, 288; Apker v. Crown Can Co., 150 Pa. Superior, 302, 304-5; Vorbnoff v. Mesta Machine Co., 286 Pa. 199; Callihan v. Montgomery, 272 Pa. 56, 73; Strunk v. E. D. Huffman & Sons, 144 Pa. Superior, 429, 436.

. . . The present case has so proceeded that our ruling that the board has made an error of law in concluding that the facts do not constitute an accident within the meaning and intent of the compensation laws necessarily means that claimant is entitled to compensation. For this reason, we need not return the record to the board."

The court thereupon entered judgment for claimant.

In addition to the cases there cited, there are a number of recent cases sustaining the entry of judgment under proper circumstances in the court of common pleas. In Apker v. Crown Can Co. et al., 150 Pa. Superior Ct. 302, 304, the court held:

"If the Board should erroneously, on petition by the employer, make an order terminating an existing agreement, the court might, in a proper case, reverse and enter judgment for *claimant*. These are cases in which the disposition of the question of law involved is determinative of the outcome of the case and there is left no further fact-finding function for the Board to perform. It has been frequently pointed out that in such cases the legislature did not intend that the court should perform the senseless function of returning the record for the Board to enter the only judgment possible under its ruling. *Callihan v. Montgomery*, 272 Pa. 56, 115 A. 889; *Anderson v. Baxter*, 285 Pa. 443, 132 A. 358; *Vorbnoff v. Mesta Machine Co.*, supra."

This language was cited with approval in Caviston v. Lang et al., 152 Pa. Superior Ct. 51.

In Rosenberger v. Mar-Bern Coal Co. et al., 151 Pa. Superior Ct. 373, the referee and the board had entered a disallowance upon the erroneous ruling that certain medical testimony did not measure up to the required standard of certainty. The Superior Court, speaking through President Judge Keller, stated that, had it not been for intervening changes in the personnel of the Workmen's Compensation Board, "We would have no hesitation in reversing the judgment of the Court

below, which affirmed the order of disallowance of the Board, and direct the entry of judgment on the award." See also Hein v. Ludwig, 118 Pa. Superior Ct. 152, 157.

The tendency of the recent cases, therefore, is to do away with the useless and futile formality of returning the record from the courts to the compensation authorities where the reversal of their judgment is based, not upon the question of fact, but exclusively upon an issue of law. This is such a case. We, therefore, sustain the appeal and make the following

## Order

And now, to wit, November 29, 1943, the appeal of claimant, Mrs. Anna Filipczak, acting on her own behalf and on behalf of her eight children, is sustained. We accordingly enter judgment in the above-entitled case as follows:

Judgment is hereby entered in favor of Anna Filipczak, claimant, and against defendants, Erie Forge Company and Liberty Mutual Insurance Company, its insurance carrier, and the State Workmen's Insurance Board, custodian of the Occupational Disease Fund, in the sum of $3,600, being the maximum amount which claimant and her children are entitled to under the provisions of the Occupational Disease Act of 1937, P. L. 2714, and all of which said amount is now accrued and owing, with interest at six percent per annum upon all deferred payments of compensation in accordance with section 410 of The Workmen's Compensation Act.

The Erie Forge Company and Liberty Mutual Insurance Company, its insurance carrier, shall pay 20 percent of said judgment, or the sum of $720. The remaining 80 percent, or the sum of $2,880, shall be paid by the State Workmen's Insurance Board, custodian of the Occupational Disease Fund, out of the moneys of said fund.

Judgment is also directed to be entered against the Erie Forge Company and Liberty Mutual Insurance Company, its insurance carrier, in the amount of $200, to reimburse Mrs. Anna Filipczak for the funeral expenses of her husband.