## Stancher v. Wyoming Valley Improvement Company

Before Pinola, P. J., Lewis and Brominski, *J.J.*

*Nathan Hyman* and *Paul R. Orrson*, for appellant.

*Charles J. Bufalino, Jr.*, Special Assistant Attorney General, for appellee.

PINOLA, P. J., March 13, 1964.—This is an appeal by decedent's widow for reimbursement of expenses paid by her for the funeral of her husband whose death on February 23, 1961, was due to an occupational disease.

From the record which was offered in evidence, it appears that Referee Kozak by decision dated June 27, 1957, found that on October 12, 1956, claimant, John Stancher, had become totally disabled by anthraco-silicosis in the third stage, and he added:

"He had been contracting the anthraco-silicosis for more than five years prior to December 13, 1953 and contracted it as a result of his employment in the various coal mines in which he had worked."

The award was at the rate of $32.50 per week and payments totaling $7,500 were made to him.

Claimant herein filed her petition on June 29, 1961.

The Commonwealth in its answer, filed July 21, 1961, (1) denied that decedent died as the result of an occupational disease, and (2) it denied paragraph 12 of the petition that claimant was dependent upon her husband. It did not deny liability because of her residence in Italy.

Under section 306 (g) of the Act of June 21, 1939, P. L. 566, 77 PS §1406:

"No reduction [in payment of compensation] shall be made for the amount which may have been paid, or contracted to be paid, for medical and hospital services and medicines, nor for the expenses of the last sickness and burial."

And under section 307 of the same act, 77 PS §1407, provision is made for compensation with the following introductory sentence:

"In case of death resulting from occupational disease, compensation shall be computed on the following basis and distributed to the following persons, subject to the limitations of section 301 . . ."

Paragraph 8 of that section provides:

"Whether or not there be dependents as aforesaid, the reasonable expense of burial, not exceeding two hundred and fifty dollars, which shall be paid by the employer or insurer directly to the undertaker (without deduction of any amounts theretofore paid for compensation or medical expenses)."

The limit of expense was raised to $425 by the Act of August 24, 1953, P. L. 1389, and by Act of December 1, 1959, P. L. 1678, it was again raised to $500.

The liability of an employer to pay compensation is fixed as of the date of last exposure, but the duty to make such payments and the amount thereof becomes

fixed upon the date when disability occurs: Pekorofsky v. Glen Alden Coal Company, 171 Pa. Superior Ct. 97.

Although the funeral expenses in this case were the equivalent of $500 in United States currency, since decedent last worked on December 13, 1963, claimant can only claim $425.

At the hearing before Referee Lenahan, the record of the hearing before Referee Kozak was offered in evidence and it was stipulated as follows:

"It is agreed by all parties in this case that the claimant's decedent was employed inside various anthracite coal mines: by the Plains-Hilldale Coal Co. from 1935 to 1943, by the Jermyn Green Coal Co. from 1946 to 1949, by the John Conlon Coal Co. from 1949 to 1951, and by the Hudson Coal Company, now by change of name the Wyoming Valley Improvement Co., from November 24, 1952 to December 13, 1953, during all of which periods of employment the claimant was continuously exposed to an anthraco-silica hazard.

"It is agreed by all parties that the last day of work of the claimant's decedent in the anthracite coal industry was December 13, 1953, and that his average weekly wage as of that date was $75."

Referee Lenahan found (finding 6) "that the decedent died on February 23, 1961 and that the cause of his death was anthracosilicosis."

At the conclusion of the testimony, counsel for the Commonwealth moved to dismiss the petition for the reason that under section 310 of the Act of 1953, alien widows are barred from receiving any benefits under the Occupational Disease Act. He admitted that in 1956, the act was amended removing the disqualification of widows in part.

The referee also erred when he found (finding 10):

"(T)hat under Section 310 of the Occupational Disease Act *amended September 1, 1953* that alien widows,

not resident of the United States, were not entitled to compensation."

And he erred again in the two conclusions wherein he referred to section 310 of the Occupational Disease Act, as amended September 1, 1953.

The law clerk to the board and the three members of the board all fell into the same error. There was no amendment of section 310 of the Occupational Disease Act on September 1, 1953. This is a most unusual case and shows there was careless consideration all along the line.

Section 310, Act of 1939, P. L. 566, 77 PS §1410, reads as follows:

"Alien widows, children, widowers, parents, brothers, and sisters, not residents of the United States, shall not be entitled to any compensation."

We believe this section applies only to compensation payments in lieu of wages and does not preclude the payment of funeral benefits.

The court in Kugris v. Hammond Coal Company, 174 Pa. Superior Ct. 376, found that compensation, regarded as a whole, comprehends all payments made under the act. It said, page 380:

"(S)ince the undertaker is to be paid 'without deduction of any amounts theretofore paid for compensation or medical expenses', the provision for burial expenses is plainly and unequivocally an extra and additional item of the employer's liability."

It added, page 381:

"There is a palpable distinction between the compensation paid to an employe or his dependents to reimburse him or them for the loss of wages or earning power, which is perhaps the prime object of the statute, and the compensation provided for medical services and burial expenses which relieve him or his dependents from the payment of necessary expenditures, directly caused by the compensable occupational dis-

ease. Both are compensation but patently they differ as to their objectives, and payment in full of one category of compensation does not exonerate an employer from payment of another. That is the plain and obvious meaning of the phrase, 'without deduction of any amounts theretofore paid for compensation or medical expenses.' 'Compensation' in that phrase pointedly refers to reimbursement for loss of wages or earning power. By joining 'compensation' and 'medical expenses' in the same sentence and thereby revealing and emphasizing the categorical difference between them, the Act itself recognized the fundamental distinction, and 'burial expenses' are but another separate and distinct item of compensation for which the employer is liable."

The Supreme Court in Staller v. Staller, 343 Pa. 86, affirmed the Superior Court decision in 144 Pa. Superior Ct. 83. There Judge Hirt held that the term "compensation" under the Occupational Disease Act of 1937, P. L. 2714, includes the supplying of medical and hospital services. He said, page 87:

"The provision requiring the employer to furnish medical service is in the interest of the employee and . . . supplying medical service is as much compensation as payments for loss of earnings."

He added, page 88:

"The Occupational Disease Act is a supplement to the Workmen's Compensation Act and must be liberally construed along with it as a part of that humane legislation."

Since the word "compensation" has several meanings, it would seem that a liberal construction should be given to provide the benefit intended by the legislature.

Later, Judge Hirt held:

"In ascertaining legislative intent the court may presume 'that the Legislature does not intend a result

that is . . . unreasonable': Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS 552."

If a liberal construction is given to provide benefits, why would a court give the language strict construction to deny a humane benefit such as reimbursement of burial expenses?

Judge Lewis in his opinion in Hvizda v. Jeddo Highland Coal Company, December term, 1952, no. 1436, after referring to subsection 8 of section 307, declared:

"We cannot conceive of any further evidence of its intention which the Legislature might have given that funeral expenses were considered separate and apart from compensation under the foregoing section of the act.

"To place such a construction on the act as defendants are wont to do, would be to deny a humane benefit of the act, which is apparent from its general context. The act does not favor such a strained or technical construction. It has often been stated by our appellate courts that the Pennsylvania Occupational Disease Act should be given a broad and liberal construction, consistent with its remedial character, in order to effectuate its purpose. See Roschak et ux. v. Vulcan Iron Works, 157 Pa. Superior Ct. 227, 42 A. 2nd 280; Harvey v. Philadelphia W. & C. S. Co., 167 Pa. Superior Ct. 435, 74 A. 2nd 815; Valent v. Berwind-White Coal Mining Co., 172 Pa. Superior Ct. 305.

"Even if we were to concede that there is some ambiguity in the various provisions of the statute, we feel bound by a well-recognized rule of interpretation, that where a provision is fairly susceptible to two constructions, the injustice, unreasonableness and inconvenience which may follow one construction may properly be considered, and the construction should prevail that will avoid objectionable consequences and advance what is presumed to be the true object and purpose of the

statute. Reilly vs. City Deposit Bank and Trust Company, 322 Pa. 577, 582, 185 A. 620."

We are satisfied that section 310 does not bar the claim of the widow for funeral expenses.

If it should be held that this section does bar the claim, then we agree with the excellent decision of Judge Hester in Giovannetti v. Conte Equipment Company, 24 D. & C. 2d 505, that section 310 is in conflict with the provisions of the Italian-American Treaty of Friendship, Commerce and Navigation, ratified in 1949, and, therefore, is invalid. The pertinent section of that treaty reads as follows:

" 'The nationals of either High Contracting Party, regardless of alienage or place of residence, shall be accorded rights and privileges no less favorable than those accorded to the nationals of the other High Contracting Party, under laws and regulations within the territories of such other High Contracting Party that (a) . . . . (b) grant to a wage earner or an individual receiving salary, commission or other remuneration, or to his relatives, heirs or dependents, as the case may be, a right of action, or a pecuniary compensation or other benefit or service, *on account of occupational disease*, injury or death arising out of and in the course of employment or due to the nature of employment': 63 Stat. 2255, article XII, subdivision 1."

It is quite evident that the legislature took notice of this treaty and its provisions because they amended section 310 on February 28, 1956, P. L. (1955) 1095, 77 PS § 1410, to read as follows:

"Alien widows, children and parents, not residents of the United States, shall be entitled to compensation, but only to the amount of fifty per centum of the compensation which would have been payable if they were residents of the United States: Provided, That compensation benefits are granted residents of the United

States under the laws of the foreign country in which the widow, children or parents reside."

This amendment also supports our conclusion that the language of section 310 applies only to compensation proper because the restriction which is removed applies only to such compensation.

We repeat, in our considered judgment, the legislature never intended to deny funeral benefits to the person who paid the expenses.

And if funeral benefits should be barred by this section, then we hold that it violates the treaty provision, supra, and is, therefore, invalid.

Accordingly, we enter the following

### Order

Now, March 13, 1964, 10 a.m., the appeal is sustained, the action of the board is reversed, and judgment is directed to be entered in favor of claimant, Mrs. Silva Biasi Stancher, against the Commonwealth of Pennsylvania, in the amount of $425, with interest from February 23, 1961.